UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

LIGHTHOUSE RESOURCES INC., et al.,

          Plaintiffs,

v.

JAY INSLEE, et al.,

          Defendants.

CASE NO. 3:18-cv-050040-RJB

ORDER ON MOTION OF BNSF RAILWAY COMPANY TO INTERVENE AS PLAINTIFF

THIS MATTER comes before the Court on the Motion of BNSF Railway Company to Intervene as Plaintiff. Dkt. 22. The Court has considered the motion and the remainder of the file herein.

BNSF seeks to intervene as a matter of right under Fed. R. Civ.P. 24(a)(1)(2). BNSF seeks permissive intervention under Fed. R. Civ. P. 24(b)(1)(B) in the alternative. The motion to intervene should be granted on both grounds.

## I. BACKGROUND

A. <u>Lighthouse Complaint.</u>

The following factual summary assumes the truth of the allegations of the underlying Complaint filed by the plaintiffs, Lighthouse Resources Inc. and its subsidiaries (collectively, "Lighthouse").

ORDER ON MOTION OF BNSF RAILWAY COMPANY TO INTERVENE AS PLAINTIFF - 1

This case arises out of efforts by Lighthouse to develop a coal export terminal in Longview, Washington. Dkt. 1 ¶¶5, 16. Lighthouse is a coal energy supply chain company that manages coal mining, transfer by rail and ocean-going vessels, and sale to end users. *Id*. at ¶¶5, 16, 36. Lighthouse mines mineral assets in Wyoming and Montana for sale in Asian markets. *Id*. Lighthouse presently ships coal out of an export terminal in Canada, which has increased shipping costs and constrains Lighthouse's ability to fulfill contractual terms and meet market demand, which is increasing. *Id*. at ¶¶48-50.

Lighthouse has worked to identify, contract with, and/or develop a new coal export facility since 2009, and it has identified the Millennium Bulk Terminal (MBT) in Longview, Washington, as its preferred west coast site. Dkt. 1 at ¶¶52, 54. MBT weekly receives coal by rail, and the coal is loaded onto trucks for distribution. *Id*. at ¶62. BNSF provides common carrier service to MBT, which is also capable of receiving trains from Union Pacific. *Id*. ¶67. Starting in 2012, Lighthouse began the permitting process for the proposed coal export facility at MBT, which has involved approximately two dozen federal and state plans, permits, and approvals. *Id*. at ¶70.

All three named defendants, Jay Inslee, Governor to the State of Washington, Maia Bellon, Director of the Washington Department of Ecology, and Hillary Franz, Commissioner of Public Lands (collectively, "the State"), have publicly expressed personal opposition to exporting coal. Dkt. 1 at ¶¶80-98. Under the façade of official state policy, the named defendants have coordinated with Oregon and California to thwart Lighthouse expansion of coal exports. *Id*. at ¶99-116. Through administrative decisions, the State has effectively "blocked" development of the MBT, by, *inter alia*, (1) issuing an Environmental Impact Statement (EIS), listing nine unavoidable, significant adverse impacts; (2) denying approval of a sublease between Lighthouse

and another company that would allow Lighthouse, as sublessee, to handle coal at MBT; and (3) denying with prejudice Lighthouse's § 401 Clean Water Act (CWA) certification, a prerequisite to obtaining other necessary permits. *Id*. at ¶¶63, 130, 155, 161, 163. *See also*, Dkt. 1-1(§ 401 CWA certification), Dkt. 1-2 (DNR denial of sublease). Administrative decisions in part formed the basis for the denial of a Shoreline Permit Application by Cowlitz County. *Id*. at ¶181. *See* Dkt. 1-3.

The Complaint alleges that the State's administrative decisions violate the dormant commerce clause of the United States Constitution, as well as the Interstate Commerce Commission Termination Act (ICCTA), which gives the Surface Transportation Board exclusive authority to regulate rail transportation. 49 U.S.C. §10101 *et seq*. *See City of Auburn v. United States*, 154 F.3d 1026, 1030-31 (9th Cir. 1998).

B. <u>BNSF Complaint.</u>

BNSF's proposed Complaint in Intervention for Declaratory and Injunctive Relief begins with the same factual premise as the underlying Complaint: the named defendants misused their regulatory powers to prevent coal commerce, including transport of coal by BNSF. Dkt. 22-1 at ¶1, 3. BNSF seeks to join Lighthouse in alleging violations of the dormant commerce clause and the ICCTA. Dkt. *Id*. at ¶¶16-18. BNSF also alleges that the State violated the foreign affairs doctrine, by interfering with the federal government's national policy on coal resources and exports. *Id*. at ¶¶19, 119-126.

BNSF's proposed intervenor complaint alleges standing (Dkt. 22-1 at ¶¶28-30) and jurisdiction (*id*. at ¶¶20-23).

## II. DISCUSSION

A. <u>Intervention as a matter of right.</u>

Rule 24(a)(2) provides for intervention as a matter of right. Intervenors have the burden to show: (1) the motion is timely; (2) the intervenor has a significant protectable interest relating to the property or transaction that is the subject of the action; (3) the disposition of the action may, as a practical matter, impair or impede the intervenor's ability to protect its interest; (4) the existing parties may not adequately represent the intervenor's interest. *S. California Edison Co. v. Lynch*, 307 F.3d 794, 802 (9th Cir. 2002), *modified*, 307 F.3d 943 (9th Cir. 2002).

*(1) Timeliness.*

The State does not challenge the timeliness of BNSF's intervention. BNSF filed its motion to intervene less than two months after the case was filed, prior to substantial discovery and rulings on dispositive motions. BNSF has met its burden to show that its motion is timely.

*(2) Significant protectable interest.*

A 'significant protectable interest' exists where the intervenor "asserts an interest that is protected under some law, and . . . there is a 'relationship' between its legally protected interest and the plaintiff's claims." *S. California Edison Co. v. Lynch*, 307 F.3d at 803 (internal quotations and citations omitted). "The interest test . . . directs courts to make a practical threshold inquiry," and the "relationship test is met if the resolution of the plaintiff's claims actually effect" the intervenor. *Id*.

BNSF claims an interest in resolution of Lighthouse's ICCTA preemption claim, because "Defendants' actions and inactions rest on purported impacts associated with BNSF's operations and physical capital and plant," e.g., rail noise, traffic, and air pollution concerns of the State. Dkt. 22 at 4, citing Dkt. 1 at ¶¶165, 177, 251-53. BNSF also claims an interest in resolution of the dormant commerce clause claims, because their resolution will affect BNSF's ability to participate in interstate and foreign commerce. *Id*. BNSF acknowledges an economic interest in

the outcome of the case, and, BNSF contends, the case "has and will continue to adversely affect BNSF's core operations, infrastructure maintenance and expansion" of its common carrier functions to transport commodities by rail. Dkt. 44 at 3, 4.

The State argues that BNSF has alleged only a generalized and speculative economic interest, which is insufficient. Dkt. 41 at 5, 8, 9. The States notes that BNSF concedes that it is not a party to any of the permits or approvals that are the subject of this litigation, therefore, the State argues, BNSF's only harm could be in the form of economic injury to unknown future business. *Id*.

BNSF has made a sufficient showing of a significant protectable interest. As the common carrier expected to transport Lighthouse coal from the interior west to the MBT, BNSF has an interest in the outcome of whether the State's administrative decisions should be upheld. The administrative decisions relied on railroad traffic concerns when denying permits and sublease approval. The decisions, in their effect, limit BNSF's ability to transport coal, which at least facially triggers dormant commerce clause and ICCTA concerns, especially where BNSF involved itself in the Lighthouse permitting process. For example, BNSF made public statements in support of Lighthouse's Shoreline Permit Application, a permit denied in part because of projected negative impacts of railroad traffic. Dkt. 1-3 at 12, 14-21.

*(3) Impeding or impairment of BNSF's ability to protect its interest.*

According to BNSF, its ability to protect its interests may be impaired and impeded by the outcome of this case because of the relief Lighthouse seeks: declaratory relief relating to BNSF's rail operations and services to the MBT, and vacating of the State's "unconstitutional and illegal decisions regarding the [MBT]" and related injunctive relief. Dkt. 22 at 5. If the State's administrative decisions are affirmed, BNSF argues, BNSF's ability to provide common

carrier service is impeded by the State's illegal regulation of rail transportation, which is a core channel of commerce. Dkt. 44 at 3, 4.

The State argues that because BNSF has not shown a protectable interest, it cannot show that its ability to protect the interest might be impaired by disposition of the action. Dkt. 41 at 5. The State's argument therefore depends on its prior protectable interest argument.

BNSF has made a sufficient showing that its ability to protect its interest may be impeded by the outcome of this case. BNSF has an interest in protecting coal transport by rail, but its interest extends further to commodity transport in general, and the concern that administrative decisions in this case could prove to be problematic precedent for BNSF transport of other commodities.

*(4) Adequacy of Lighthouse representing BNSF's interests.*

To determine whether a party's interest are adequately represented by existing parties, courts consider: "(1) whether the interest of a present party is such that it will undoubtedly make all the intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether the would-be intervenor would offer any necessary elements of the proceedings that other parties would neglect." *Southwest Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 823 (9th Cir. 2001).

BNSF argues that Lighthouse cannot adequately represent BNSF's interests, because Lighthouse, including its subsidiaries, is a vertically integrated coal industry corporation with an interest in rail only insofar as rail effects one link of its global coal supply chain, whereas BNSF's interests are broader, given the potential effects of this action on BNSF's rail freight operations generally. Dkt. 22 at 6. BNSF and Lighthouse have different interests, BNSF argues, because Lighthouse wants the State to stop blocking development of the MBT, but BNSF wants

to prevent the State from *de facto* regulation of commerce based on the type of commodity transported. Dkt. 44 at 5.

The State argues that the most important of the three *Berg* factors is "how [BNSF's] interest compares with the interests of the existing parties," which, if satisfied, gives rise to a presumption of adequacy. In this case, the State argues, BNSF and Lighthouse share the same ultimate objective, to invalidate the administrative decisions, and BNSF has not made a showing to overcome this presumption. Dkt. 41 at 9, 13, 14. The State also argues that "[Lighthouse] adequately represents the positions that BNSF would advocate for," because Lighthouse and BNSF make identical arguments. *Id*.

Considering the three *Berg* factors, the balance weighs in favor of BNSF. As discussed above, *see* §§IIA(2) and (3), BNSF and Lighthouse have different, albeit overlapping, interests, so the presumption that Lighthouse's representation is adequate does not arise. *Compare to Arakaki v. Cayetano*, 324 F.3d 1078 (9th Cir. 2003). Although BNSF shares with Lighthouse an interest in protecting coal transport, its interest extends to rail transport of commodities generally and to interstate transport. It is unclear that Lighthouse 'will undoubtedly make' the same arguments as BNSF, even if Lighthouse is capable and willing to make them. BNSF is uniquely positioned to marshal its knowledge about rail transport, e.g., noise reduction technology, common carrier efficiencies, etc., that may effect aspects of the case.

BNSF should be permitted to intervene under Fed. R. Civ. P. 24(a)(2) as a matter of right.

B. <u>Permissive intervention.</u>

Under Fed. R. Civ. P. 24(b)(2),

> Upon timely application anyone shall be permitted to intervene in an action ... when an applicant's claim or defense and the main action have a question or law or fact in common.... In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

Permissive intervention may be granted if the intervenor can show: (1) timeliness, (2) independent grounds for jurisdiction; and (3) common question of law or fact between the intervenor's claim or defense and the main action. *Greene v. U.S.*, 996 F.2d 973, 979 (9th Cir. 1993). Courts may also consider other discretionary factors if these three threshold requirements have been met. *Donnelly v. Glickman*, 159 F.3d 405, 412 (9th Cir. 1998). *See Spangler v. Pasadena City Bd. Of Ed.*, 552 F.2d 1326, 1330 (9th Cir. 1977).

Beginning with the first threshold element, timeliness, the Court finds that BNSF has satisfied this requirement. Analyzing timeliness for permissive intervention is coextensive with that for intervention as a matter of right. *See above*, §IIA(1).

Second, BNSF has shown independent grounds for jurisdiction. BNSF brings its claim pursuant 28 U.S.C. §1331 as a case that arises under the Constitution and laws of the United States. Dkt. 22-1 at ¶20. BNSF alleges subject matter jurisdiction under 28 U.S.C. §§1343 and 1983. *Id.* at ¶21. *See also*, *id.* at ¶¶98, 109, 118, 126. The State objects to BNSF's independent grounds for jurisdiction based on standing, which is addressed below. *See below*, §IIC.

Finally, BNSF has shown common questions of law or fact. BNSF argues that its claims stem from the "same pattern of [the State's] unconstitutional conduct" as Lighthouse's claims. Dkt. 44 at 7. The Court concurs. *Compare, e.g.,* Dkt. 1 at ¶¶9, 50, 51, 54, 61; Dkt. 22-1 at ¶¶6, 7, 80, 81, 96, 140.

BNSF having satisfied the three threshold requirements, the Court also concludes that there is no undue delay or prejudice to the original parties. BNSF filed its motion early in the proceedings, and allowing BNSF to intervene economizes issues stemming from the same set of facts.

1 | Therefore, if BNSF is not permitted to intervene as of right, in the alternative, permissive intervention should be granted under Fed. R. Civ. P. 24(b)(2).

C. <u>Standing.</u>

The State argues because BNSF also brings a claim under the foreign affairs doctrine, BNSF seeks broader relief than that sought by Lighthouse and therefore must demonstrate standing. Dkt. 41 at 10. BNSF does not dispute that it must show standing because of the additional claim. Dkt. 22 at 7; Dkt. 44 at 5, 6. The Court concurs that, based on recent authority, BNSF must make a showing of standing. *Town of Chester, N.Y. v. Laroe Estates, Inc.*, 137 S.Ct. 1645, 1651 (2017) ("an intervenor of right must demonstrate Article III standing when it seeks additional relief beyond that which the plaintiff requests.")

The doctrine of standing "ensure[s] that federal courts do not exceed their authority[.]" *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1547 (2016). The "irreducible constitutional minimum of standing consists of three elements[:] [t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (2) that is likely to be redressed by a favorable judicial decision." *Id*. (internal quotations and citations omitted).

BNSF alleges an injury in fact, with an alleged injury to "BNSF's economic and legal interests in transporting commodities in interstate and foreign commerce, including by delaying and deterring private sector investment in coal export facility development in Washington [and] . . . negatively affect[ing] the volume of freight that can move across the country . . . whether coal or otherwise." Dkt. 22-1 at ¶28. Taking the allegations as true, BNSF has shown that its injury is particularized, because the alleged harm is specific to BNSF; and concrete, because the injury "actually exist[s]." *Spokeo*, 136 S.Ct. at 1548.

BNSF alleges that this injury is fairly traceable to the State, because the harm is caused by the named defendants' "misuse of regulatory processes to build a regulatory wall blocking expanded coal transport[.]" Dkt. 22-1 at ¶29. Based on the allegations, the cause of BNSF's harm is the State administrative decisions, which satisfies the second element.

BNSF alleges that its injury is likely to be redressed by this lawsuit, because the relief requested by BNSF will reverse the State's impermissible practices and prevent the State from repeating its conduct in the future. Dkt. 22-1 at ¶30. Under assumptions that the State "blocked" development of the MBT and that the relief requested could reverse State administrative decisions, this element is satisfied.

Based on the pleadings, BNSF has made a sufficient standing showing. Because discovery may otherwise inform the contours of BNSF's claims, this finding is limited to the pleadings.

* * *

THEREFORE, The Motion of BNSF Railway Company to Intervene as Plaintiff (Dkt. 22) is HEREBY BY GRANTED.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

Dated this 26th day of March, 2018.

ROBERT J. BRYAN
United States District Judge