The Honorable Robert J. Bryan

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT TACOMA

LIGHTHOUSE RESOURCES, INC., *et al.*,

Plaintiffs,

and

BNSF RAILWAY COMPANY,

Plaintiff-Intervenor,

v.

JAY INSLEE, *et al.*,

Defendants,

and

WASHINGTON ENVIRONMENTAL COUNCIL, *et al.*,

Defendant-Intervenors.

No. 3:18-cv-05005-RJB

WASHINGTON ENVIRONMENTAL COUNCIL *ET AL*. MOTION FOR PARTIAL SUMMARY JUDGMENT ON PREEMPTION CLAIMS (Millennium Count III, IV; BNSF Count I)

Note on Motion Calendar: September 7, 2018

**ORAL ARGUMENT REQUESTED**

WEC MOTION FOR PARTIAL SUMMARY JUDGMENT ON PREEMPTION CLAIMS
(Millennium Count III, IV; BNSF Count I)
(3:18-cv-05005-RJB)

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA 98104*
*(206) 343-7340*

**TABLE OF CONTENTS**

INTRODUCTION ..... 1

BACKGROUND ..... 1

ARGUMENT ..... 2

I. THE ICCTA DOES NOT PREEMPT STATE AND LOCAL PERMITTING REQUIREMENTS FOR THE MILLENNIUM COAL TERMINAL. ..... 3

A. Millennium Is Not a Rail Carrier, and Its Project Does Not Fall under the Surface Transportation Board's Jurisdiction. ..... 3

B. The Challenged Water Quality Certification and State Land Sub-Lease Decisions Do Not Directly or Indirectly Regulate Rail. ..... 6

II. THE PORTS AND WATERWAYS SAFETY ACT DOES NOT PREEMPT THE STATE AGENCY DECISIONS. ..... 10

A. There Is No Conflict Preemption with respect to PWSA Title I. ..... 11

CONCLUSION ..... 12

WEC MOTION FOR PARTIAL SUMMARY JUDGMENT ON PREEMPTION CLAIMS (Millennium Count III, IV; BNSF Count I) (3:18-cv-05005-RJB) - i -

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA 98104*
*(206) 343-7340*

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Beveridge v. Lewis*,
939 F.2d 859 (9th Cir. 1991) ....................11

*Canadian National Ry. Co. v. Rockwood*,
2005 WL 1349077 (E.D. Mich. 2005) ....................5

*City of Auburn v. United States*,
154 F.3d 1025 (9th Cir. 1998) ....................5

*Florida E. Coast Ry. Co. v. City of W. Palm Beach*,
266 F.3d 1324 (11th Cir. 2001) ....................8

*Franks Inv. Co. LLC v. Union Pac. R.R.*,
593 F.3d 404 (5th Cir. 2010) ....................8

*Green Mountain R.R. Corp. v. Vermont*,
404 F.3d 638 (2d Cir. 2005) ....................5

*Humboldt Baykeeper v. Union Pac. R.R. Co.*,
2010 WL 2179900 (N.D. Cal. 2010) ....................7

*Norfolk S. Ry. Co. v. City of Alexandria*,
608 F.3d 150 (4th Cir. 2010) ....................8

*Northwest Alloys, Inc., et al. v. State of Wash. Dep't of Nat. Res., et al.*,
No. 51677-2-II (Wash. Ct. of Appeals Div 2)) ....................9

*Oregon Coast Scenic R.R. v. Oregon Dep't of State Lands*,
841 F.3d 1069 (9th Cir. 2016) ....................3

*Portland Pipe Line Co. v. City of South*,
288 F. Supp. 3d 321 (D. Maine 2017) ....................11

*Ray v. Atlantic Richfield Co.*,
435 U.S. 151 (1978) ....................10

*United States v. Locke*,
529 U.S. 89 (2000) ....................10, 11

*United States v. Massachusetts*,
493 F.3d 1 (1st Cir. 2007) ....................10

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA 98104*
*(206) 343-7340*

**Surface Transportation Board Orders**

*Boston & Marine Corp. and Springfield Terminal R.R. Co.*, S.T.B. 34662, 2013 WL 3788140 (July 19, 2013)........8

*City of Alexandria, Va.—Petition for Declaratory Order*, S.T.B. 35157, 2009 WL 381800 (Feb. 17, 2009) ........4

*Hi Tech Trans, LLC—Petition for Declaratory Order*, S.T.B. 34192, 2003 WL 21952136 (Aug. 14, 2003) ........3, 4

*SEA-3, Inc.—Petition for Declaratory Order*, S.T.B. 35853, 2015 WL 1215490 (Mar. 16, 2015)........3, 5

*Town of Babylon & Pinelawn Cemetery—Petition for Declaratory Order*, S.T.B. 35057, 2008 WL 275697 (Feb. 1, 2008) ........5

*Town of Milford, Mass.—Petition for Declaratory Order*, S.T.B. 34444, 2004 WL 1802301 (Aug. 11, 2004) ........4

*Valero Refining Company—Petition for Declaratory Order*, S.T.B. 36036, 2016 WL 5904757 (Sept. 20, 2016) ........7

*Washington & Idaho Ry.—Petition for Declaratory Order*, S.T.B. 36017, 2017 WL 1037370 (Mar. 15, 2017)........7

**Shorelines Hearings Board Order**

*Millennium Bulk Terminals v. Cowlitz County Hearing Examiner*, Order on Motions, SHB No. 17-017c (April 20, 2018)........9

**Statutes**

Interstate Commerce Commission Termination Act, 49 U.S.C. § 10101 *et seq.*........ *passim*

Ports and Waterways Safety Act, 33 U.S.C. § 1221 *et seq.* and 46 U.S.C. § 3701 *et seq.*........1, 3, 10, 11

State Environmental Policy Act, RCW 43.21C.031(2)(f) ........2

State-Owned Aquatic Lands, General Use, Sale, Lease, RCW Chapter 79.105........2

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA 98104*
*(206) 343-7340*

**Regulation**

WAC 197-11-060(4)(b) ............................................................................................................2

WEC MOTION FOR PARTIAL SUMMARY JUDGMENT ON PREEMPTION CLAIMS (Millennium Count III, IV; BNSF Count I) (3:18-cv-05005-RJB) - iv -

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA 98104*
*(206) 343-7340*

INTRODUCTION

Lighthouse Resources *et al.* (hereinafter "Millennium") invoked this Court's federal jurisdiction to challenge a state water quality certification denial and a denial of a state land sub-lease for its single project, despite the fact that Millennium is concurrently challenging those same denials before appropriate state courts and adjudicative boards. Plaintiff-intervenor BNSF, by its own admission not part of the proposed coal terminal, joined the fray. Between Millennium and BNSF, they bring five claims, two alleging that separate federal statutes preempt the state's permitting decisions and three alleging constitutional infirmities with the state permit denials. All these claims are baseless. In this motion for partial summary judgment, defendant-intervenors Washington Environmental Council *et al.* ("WEC") move for summary judgment and dismissal of the claims alleging federal preemption under the Interstate Commerce Commission Termination Act ("ICCTA") (Millennium Count III; BNSF Count I) and the Ports and Waterways Safety Act ("PWSA") (Millennium Count IV).[1] There are no disputes of material facts in this motion: Millennium is not a rail carrier, nor do the challenged decisions directly or indirectly regulate rail. Similarly, there is no factual dispute that the challenged decisions do not regulate marine tanker vessels or directly or indirectly conflict with navigation regulations. WEC asks the Court to grant summary judgment dismissing the preemption claims.

BACKGROUND

Millennium sought various permits from state and local jurisdictions to build a single coal export terminal on the banks of the Columbia River in Longview, Washington. As required under the State Environmental Policy Act ("SEPA"), Cowlitz County and the Washington Department of Ecology jointly conducted a full environmental and public health review that culminated in a

---

[1] The Court has expressed its preference for focused motions dealing with limited issues. This motion for partial summary judgment addresses only the preemption claims; WEC anticipates filing motions for summary judgment on the non-preemption claims in the future.

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA 98104*
*(206) 343-7340*

Final Environmental Impact Statement ("FEIS") released in April 2017. SEPA mandates disclosure and consideration of environmental and public health risks and harms of projects needing state or local permits. RCW Chapter 43.21C. It requires review of all impacts caused by a particular project, even if they occur outside the state or otherwise outside the jurisdiction of the permitting agency. RCW 43.21C.031(2)(f); WAC 197-11-060(4)(b). The FEIS, released in April 2017, found nine areas of significant, adverse, and unavoidable harm from the proposed coal terminal. Millennium did not challenge or appeal the FEIS.

The Washington Department of Ecology, the Washington Department of Natural Resources ("DNR"), and the Cowlitz County Hearing Examiner have all denied various permits or authorizations necessary under Washington state law to construct and operate the coal export terminal. Those denials are based on federal, state, and local laws (Washington Shorelines Management Act, Clean Water Act § 401, DNR authorizing statutes, *i.e.* RCW 79.105) as well as Washington's substantive SEPA authority. Millennium brought multiple state administrative appeals and lawsuits of the various denials in addition to this action challenging the state decisions under federal statutory and constitutional theories.

ARGUMENT

The Interstate Commerce Commission Termination Act ("ICCTA"), 49 U.S.C. § 10101 *et seq.*, does not preempt state permits, decisions, or associated environmental review for the Millennium terminal. That is because Millennium is not a rail carrier and is not covered by the Act. That fact alone is dispositive of its preemption claims. As to BNSF, while it is a rail carrier, it is not part of this proposed project. It does not need (and did not seek) any state or local permits that it could theoretically challenge. It does not own the land; it will not operate the project; it is not an agent for Millennium (nor is Millennium an agent of BNSF); and it has no control over the project. Although Millennium and BNSF blur the lines to create the impression that this case involves a rail transportation project, it does not. Indeed, the theory that non-rail

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA 98104*
*(206) 343-7340*

carrier projects that are served by rail cannot be denied on state land-use and other regulatory grounds has been rejected by the Surface Transportation Board and the courts on multiple occasions. This Court should dismiss the ICCTA preemption claims.

Neither should the Court spend time on Millennium's preemption argument under the Ports and Waterways Safety Act ("PWSA"). The challenged decisions do not regulate or address marine tanker vessels (PWSA Title II); in fact, no such vessels are involved in the proposed project. Nor do the water quality and aquatic lands sub-lease decisions regulate navigation on the Columbia River (PWSA Title I). The Court should dismiss the PWSA preemption claim.

## I. THE ICCTA DOES NOT PREEMPT STATE AND LOCAL PERMITTING REQUIREMENTS FOR THE MILLENNIUM COAL TERMINAL.

The various state and local regulatory decisions challenged by Millennium and BNSF do not violate the ICCTA, which gives the federal Surface Transportation Board exclusive jurisdiction over "transportation by rail carriers." *See Or. Coast Scenic R.R. v. Oregon Dep't of State Lands*, 841 F.3d 1069, 1072 (9th Cir. 2016). ICCTA preemption applies only if the regulated activity falls within Surface Transportation Board jurisdiction; the building and operation of a coal terminal does not.

### A. Millennium Is Not a Rail Carrier, and Its Project Does Not Fall under the Surface Transportation Board's Jurisdiction.

The ICCTA provides that the Surface Transportation Board has exclusive jurisdiction over "transportation by rail carriers." 49 U.S.C. § 10501(b). The Board has reiterated that in order to fall under ICCTA preemption, the activity in question must "be both (1) transportation and (2) performed by, or under the auspices of, a rail carrier." *Hi Tech Trans, LLC—Petition for Declaratory Order*, S.T.B. 34192, 2003 WL 21952136, at *3 (Aug. 14, 2003); *SEA-3, Inc.—Petition for Declaratory Order*, S.T.B. 35853, 2015 WL 1215490, at *3 (Mar. 16, 2015).

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA 98104*
*(206) 343-7340*

"Rail carrier" is a specific statutory term in the ICCTA, and not every facility related to trains qualifies as a rail carrier. 49 U.S.C. § 10102(5) (defining rail carrier as "a person providing common carrier railroad transportation for compensation"). The Surface Transportation Board has held that "many shippers that own and operate locomotives and transloading facilities are not considered to be rail carriers under the [ICCTA]." *Town of Milford, Mass.—Petition for Declaratory Order*, S.T.B. 34444, 2004 WL 1802301 at *2 (Aug. 11, 2004). Whether activities at a transloading facility, like Millennium, are performed by a rail carrier depends upon many factors, including (1) the degree of the railroad's involvement in operations of the facility; (2) whether the railroad claims any agency or employment relationship with the facility; and (3) the degree of control retained by the railroad over operations at the facility. *See City of Alexandria, Va.—Petition for Declaratory Order*, S.T.B. 35157, 2009 WL 381800 at *2 (Feb. 17, 2009); *Hi Tech Trans, LLC — Petition for Declaratory Order*, S.T.B. 34192, 2003 WL 21952136 at *3-4 (Aug. 14, 2003).

In *Hi Tech Trans, LLC*, the Surface Transportation Board examined a transloading facility operated by a third party on a railroad's property. *Hi Tech Trans, LLC — Petition for Declaratory Order*, S.T.B. 34192, 2003 WL 21952136 at *1 (Aug. 14, 2003). The Surface Transportation Board concluded that the railroad's involvement in the transloading facility was "minimal and insufficient to make [the operator's transloading] activities an integral part of [the railroad's] provision of transportation by rail carrier." *Id.* at *4. Rather, the operator was merely using the railroad's property to transload cargo—the railroad did not have any involvement otherwise in the project. Accordingly, state and local permits were not preempted. *Id.* at *5; *see also Town of Milford, Mass.—Petition for Declaratory Order*, S.T.B. 34444, 2004 WL 1802301 at *2-3 (Aug. 11, 2004). (Local permits not preempted where "[t]here was nothing on the record that establishes that [the terminal company] would be acting on behalf of [the railroad] or that [the railroad] would be offering its own services to customers directly.").

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA 98104*
*(206) 343-7340*

Similarly, in *SEA-3, Petition for Declaratory Order*, S.T.B. 35853, 2015 WL 1215490 at *3-4 (March 16, 2015), for example, the Surface Transportation Board denied a petition for a declaratory order that ICCTA preempted local permits for proposed construction at a liquefied petroleum gas transloading facility served by rail. While SEA-3 and two railroads argued that the city of Portsmouth, New Hampshire should be precluded from seeking a study of the risks and impacts of the proposed project, the Surface Transportation Board confirmed that the fuel terminal company was not a rail carrier, nor acting under the auspices of a rail carrier. In short, the STB agreed that the local permitting statutes, and accompanying environmental review, applied to the project—even though it would be served by rail.

Accordingly, the Surface Transportation Board has found no federal preemption of state or local regulation of transloading facilities where the railroad had "no involvement in the operations of the facility," although the railroad owned the property but contracted with a third party to build and operate the transloading facility. *See Town of Babylon & Pinelawn Cemetery—Petition for Declaratory Order*, S.T.B. 35057, 2008 WL 275697, at *4 (Feb. 1, 2008). By contrast, a federal district court found that a transloading facility constructed by a railroad and operated by the railroad's contractor fell within the scope of the ICCTA, primarily because the railroad was holding itself out as providing the transloading services and the operator was providing services to the railroad so that the railroad could complete its transportation obligations. *Canadian Nat'l Ry. Co. v. Rockwood*, 2005 WL 1349077, at *6 (E.D. Mich. 2005).

Federal decisions that find preemption make it clear that such preemption applies to rail carriers only. In *City of Auburn v. United States*, 154 F.3d 1025 (9th Cir. 1998), the Ninth Circuit upheld the Surface Transportation Board's determination that County and City environmental permitting requirements <u>for a rail project directly regulated by the Board</u> were preempted. *Id.* at 1030-31. Similarly, in *Green Mountain R.R. Corp. v. Vermont*, 404 F.3d 638 (2d Cir. 2005), the appellate court found a substantive environmental land use permit process to be preempted when

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA 98104*
*(206) 343-7340*

considering the proposed activities <u>of a rail carrier</u>. *Id.* at 642-43.

These cases reveal that state and local regulation is not preempted here because Millennium is not a rail carrier, and BNSF is not involved in the project or its operations. There facts are indisputable. Millennium Complaint ¶¶ 16-20 (describing parties); BNSF Complaint ¶ 45 ("the BNSF rail system is not part of the Project…"); *see also* Exhibit A, Opening Remarks of Dava Kaitala, BNSF, Cowlitz County Shoreline Permit Proceedings (Nov. 2, 2017) at 2 ("[I]t is important to remember that BNSF is not an applicant for this project. We would serve Millennium, just as we would any other customer's terminal or rail-served business. Our rail system is not part of this project, and no permits are needed for BNSF."). BNSF was even clearer in its written comments:

> Importantly, BNSF's rail system is not part of the Project, and no permits are requested for any part of the BNSF rail system. BNSF has operated a rail line along the Columbia River Gorge for over 100 years, and will continue to do so whether the Project is built or not. BNSF does not need special permits for Project trains, and BNSF's systems and operations are not properly part of the environmental analysis for the Project. The Project consists of a transloading facility that will be built entirely in Cowlitz County and does not include BNSF's tracks nor locomotives in Washington or any other state. The Project will be served by BNSF trains, but those trains do not belong to the Project and are not operated by the Project—nor is BNSF's track infrastructure.

Exhibit B, BNSF Comments on Shoreline Permits for Millennium Bulk Terminals-Longview (Oct. 8, 2017) at 2.

B. <u>The Challenged Water Quality Certification and State Land Sub-Lease Decisions Do Not Directly or Indirectly Regulate Rail.</u>

Millennium and BNSF essentially assert that the state permits for this project are preempted by ICCTA because there may be an incidental impact on rail transportation. The Surface Transportation Board has repeatedly rejected this argument. For example, in a factual situation remarkably similar to the instant case, the Surface Transportation Board found "no preemption because the Planning Commission's [denial] decision does not attempt to regulate

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA 98104*
*(206) 343-7340*

transportation by a 'rail carrier.'" *Valero Refining Company—Petition for Declaratory Order*, S.T.B. 36036, 2016 WL 5904757 (Sept. 20, 2016). The Board rejected Valero's argument that the City's denial of a land-use permit for a refinery to build a facility to receive crude oil by train impermissibly interfered with the railroad:

> The Board's jurisdiction extends to rail-related activities that take place at transloading (or, as here, off-loading) facilities if the activities are performed by a rail carrier, the rail carrier holds out its own service through a third party that acts as the rail carrier's agency, or the rail carrier exerts control over the third party's operations.

*Id.* While the City's denial of Valero's Use Permit might have diminished an unspecified prospective economic advantage to the railroad that would have served the facility, such a remote or incidental effect on rail transportation did not qualify as rail regulation because Valero itself was not a rail carrier. S*ee also Washington & Idaho Ry.—Petition for Declaratory Order*, S.T.B. 36017, 2017 WL 1037370, *5 (Mar. 15, 2017) ("Federal preemption does not apply to a transload facility, however, where the activities are not being performed by or on behalf of a rail carrier, even if those activities fall 'within the broad definition of transportation.'").

Even if the Millennium project did involve transportation by a rail carrier (which it does not), the state and local decision-makers' review of the rail-related effects of this project was not preempted by federal law, categorically or otherwise. As noted, the ICCTA expressly preempts state law related to the <u>regulation</u> of rail transportation. 49 U.S.C. § 10501(b). That preemption, while broad, does not cover every action possibly connected to rail. "[B]oth courts and the [Surface Transportation Board] have limited the preemptive scope" of ICCTA. *Humboldt Baykeeper v. Union Pac. R.R. Co.*, 2010 WL 2179900, at *2 (N.D. Cal. 2010). Citing decisions from federal appellate courts, the *Humboldt Baykeeper* court reiterated that ICCTA preemption "applies only to state laws 'with respect to regulation of rail transportation.'" *Id.* ("ICCTA preemption only displaces 'regulation,' i.e., those state laws that may reasonably be said to have

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA 98104*
*(206) 343-7340*

the effect of 'managing' or 'governing' rail transportation and permits 'the continued application of laws having a more remote or incidental effect on rail transportation.'"); *see Fla. E. Coast Ry. Co. v. City of W. Palm Beach*, 266 F.3d 1324, 1331 (11th Cir. 2001) (application of local zoning and occupational license ordinances against a company leasing property from a railroad does not constitute "regulation of rail transportation" and is not preempted by the ICCTA). "The text of [the ICCTA], with its emphasis on the word regulation, establishes that only laws that have the effect of managing or governing rail transportation will be expressly preempted." *Franks Inv. Co. LLC v. Union Pac. R.R.*, 593 F.3d 404, 410 (5th Cir. 2010) (emphasis added).

BNSF's attempt to cast any consideration of environmental and health impacts associated with rail to and from the terminal as "regulation" of a rail carrier fails to save its preemption claim. BNSF Complaint ¶¶ 92-95. The various state and local permitting decisions clearly do not directly regulate the railroad; they involve protection of the shoreline environment and water quality, and the authority to construct on leased aquatic lands. As for "indirect" regulation, cases which found indirect regulation to be an issue involved vastly different facts not present here. In *Boston & Marine Corp. and Springfield Terminal Railroad Co.*, a town used a zoning decision to completely ban all rail traffic in a certain area. *Bos. & Marine Corp. and Springfield Terminal R.R. Co.*, S.T.B. 34662, 2013 WL 3788140 (July 19, 2013). Unsurprisingly, the Board found that a rail traffic ban indirectly and impermissibly regulated a rail carrier. *Id.* at *4. In another case, a city passed an ordinance regulating how trucks could service a rail carrier's ethanol transloading facility. *Norfolk S. Ry. Co. v. City of Alexandria*, 608 F.3d 150, 154 (4th Cir. 2010). Both these cases are inapplicable, as the permitting decisions at issue neither ban any rail traffic nor involved a rail carrier as part of the proposed project.

Moreover, while the FEIS considered and disclosed rail impacts, as required by state law, those impacts formed only one of multiple reasons the various permits were denied. Ecology denied Millennium's Clean Water Act § 401 certification because Millennium failed to

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA 98104*
*(206) 343-7340*

demonstrate reasonable assurance that its activities would not cause a violation of water quality standards, as well as the harms identified in the FEIS. Exhibit C, Ecology § 401 Water Quality Certification Denial (Sept. 26, 2017). DNR's obligations as the steward of Washington's state-owned aquatic lands required it to examine Millennium's request to sublease under the terms of the existing sublease, and, after doing so, DNR denied the request because Millennium and Northwest Alloys (the lessee) had failed to provide requested financial information and other information bearing on the suitability of Millennium as a subtenant. Exhibit D, DNR Denial of Consent to Sublease Aquatic Lands Lease No. 20-B0922 (Jan. 5, 2017).[2] No state agency or office was involved in the Cowlitz County Hearing Examiner permit denial under SEPA and the Washington Shoreline Management Act.[3]

* * *

In sum, the state permitting decisions challenged in this case do not apply to a rail carrier, or even to a non-rail project that is controlled by a rail carrier. They do not directly or indirectly seek to regulate or otherwise govern the use of rails. Instead, they are garden-variety local land use permitting decisions that found that a large industrial project on the banks of the Columbia River presented multiple threats to the health, safety, and welfare of the community, and the state as a whole. The ICCTA preemption claims should be dismissed.

---

[2] The Cowlitz County Superior Court found DNR's sub-lease denial arbitrary and capricious on Nov. 29, 2017; that decision is currently being briefed before in the Washington Court of Appeals, Div. 2. *Northwest Alloys, Inc., et al. v. State of Wash. Dep't of Nat. Res., et al.*, Case No. 51677-2-II.

[3] On April 20, 2018, the Washington Shorelines Hearings Board affirmed the Cowlitz County Hearing Examiner's denial of Millennium's shorelines development permits. *Millennium Bulk Terminals v. Cowlitz County Hearing Examiner*, Order on Motions, SHB No. 17-017c (April 20, 2018), *available at* http://www.eluho.wa.gov/Global/RenderPDF?source=casedocument &id=2359. Millennium and BNSF have appealed that decision to the state courts. Although discussed in Millennium's complaint (at ¶¶179-83), the Cowlitz County decision was not made by a state agency or authority and is not properly at issue before this Court.

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA 98104*
*(206) 343-7340*

## II. THE PORTS AND WATERWAYS SAFETY ACT DOES NOT PREEMPT THE STATE AGENCY DECISIONS.

Millennium's assertion of a Ports and Waterways Safety Act ("PWSA") claim highlights the extent to which Millennium misunderstands the doctrine of federal preemption. Simply because a federal statute addresses marine vessels in some manner does not mean that state permitting decisions incidentally related to vessels are preempted. The statutory language matters, and here there is no preemption—express, implied, conflict, or field—between the state actions and the PWSA.

The PWSA consists of two titles. As the U.S. Supreme Court summarized in *Ray v. Atlantic Richfield Co.,* 435 U.S. 151, 161 (1978), "[t]he focus of Title I [of the PWSA] ... is traffic control at local ports" and "Title II's principal concern is tanker design and construction." PWSA preemption applies only if a state or local government action either (1) directly conflicts with Title I of the Act, or (2) concerns an area where Title II of the Act has completely occupied the field. *See United States v. Locke*, 529 U.S. 89, 109-111 (2000) (discussing PWSA conflict and field preemption); *United States v. Massachusetts,* 493 F.3d 1 (1st Cir. 2007) (summarizing U.S. Supreme Court direction as conflict preemption for Title I and field preemption for Title II). The state actions here neither conflict with traffic control on the Columbia River (Title I) nor regulate within the field of tanker design and construction (Title II).[4]

Ecology denied a water quality certificate for the project based on Millennium's inability to demonstrate reasonable assurance that water quality standards would be met and on the numerous environmental impacts, including from in-river vessel traffic, identified in the FEIS. DNR denied a request to assign a sub-lease for state-owned aquatic lands, citing multiple

[4] A "tank vessel" is "a vessel that is constructed or adapted to carry, or that carries, oil or hazardous material in bulk as cargo or cargo residue." 46 U.S.C. § 2101(39). "Hazardous material" is defined as "a liquid material or substance that is: (A) flammable or combustible; (B) designated a hazardous substance under section 311(b) of the [Clean Water Act]; or (C) designated a hazardous material under [the Hazardous Materials Transportation Act]." 46 U.S.C. § 2101(14).

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA 98104*
*(206) 343-7340*

financial and environmental concerns. These decisions involve neither vessel traffic control nor tanker design and construction in even the remotest respect.

A. There Is No Conflict Preemption with respect to PWSA Title I.

WEC expects Millennium to focus on Title I preemption, arguing that because this single facility will not be built, the state has in essence limited the number of vessels and type of cargo on the Columbia River. There is no authority to support an argument that either denying or granting permits for proposed facilities, which could incidentally impact vessel traffic, constitutes vessel traffic control. Indeed, virtually any aspect of state and local regulation touching on the production or movement of goods could arguably have some incidental impact on the "amount and type" of vessels in transport. That's why the district court in *Portland Pipe Line Co. v. City of South Portland* recently rejected an identical argument to the one made here, finding that a city ordinance banning the loading of oil onto tankers and building oil shipping terminals did not conflict with Title I and was not preempted. 288 F. Supp. 3d 321, 438 (D. Maine 2017). "A ban on one kind of transfer and new structures associated with that transfer does not conflict with the goal of promoting uniform tanker specifications or navigation and traffic rules." *Id.*

Even if Washington's permitting decisions regulated vessel traffic, which they do not, Washington could, if it wished, enact vessel traffic regulations for the Columbia River—without triggering any preemption concerns—because the Coast Guard has not done so. Without Coast Guard regulations, there is nothing for state action to conflict with. *Locke*, 529 U.S. at 110 ("relevant inquiry for Title I preemption is whether the Coast Guard has promulgated its own requirement on the subject or has decided that no such requirement should be imposed at all.") Allowing states to exercise their "vast residual powers" under Title I recognizes the "important role for States and localities in the regulation of the Nation's waterways and ports." *Id.*; *see also Beveridge v. Lewis*, 939 F.2d 859, 864-65 (9th Cir. 1991) (upholding city ordinance that

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA 98104*
*(206) 343-7340*

prohibited the mooring or anchoring of vessels in certain areas during winter).[5]

CONCLUSION

For the reasons stated above, WEC respectfully asks the Court to grant its motion for summary judgment and dismiss the statutory preemption claims (Millennium Count III, IV; BNSF Count I) from this case.

Respectfully submitted this 16th day of August, 2018.

Kristen L. Boyles, WSBA #23806
Jan E. Hasselman, WSBA #29107
Marisa C. Ordonia, WSBA #48081
EARTHJUSTICE
705 Second Avenue, Suite 203
Seattle, WA, 98104-1711
Ph.: (206) 343-7340
Fax: (206) 343-1526
kboyles@earthjustice.org
jhasselman@earthjustice.org
mordonia@earthjustice.org

*Attorneys for Defendant-Intervenors Washington Environmental Council, Columbia Riverkeeper, Friends of the Columbia Gorge, Climate Solutions, and Sierra Club*

[5] PWSA Title II, which concerns regulations for tanker vessels, does not apply here at all because tanker vessels would not be used to transport Millennium's coal.

WEC MOTION FOR PARTIAL SUMMARY JUDGMENT ON PREEMPTION CLAIMS (Millennium Count III, IV; BNSF Count I) (3:18-cv-05005-RJB)

- 12 -

*Earthjustice
705 Second Ave., Suite 203
Seattle, WA 98104
(206) 343-7340*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 16, 2018, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of this filing to the attorneys of record and all registered participants.

Dated this 16th of August, 2018.

___*s/ Kristen L. Boyles*___________
Kristen L. Boyles, WSBA #23806
EARTHJUSTICE

WEC MOTION FOR PARTIAL SUMMARY JUDGMENT ON PREEMPTION CLAIMS (Millennium Count III, IV; BNSF Count I) (3:18-cv-05005-RJB) - 13 -

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA 98104*
*(206) 343-7340*