1

2

3

4

5

6                                                    The Honorable Robert J. Bryan

7

8                          UNITED STATES DISTRICT COURT
                          WESTERN DISTRICT OF WASHINGTON
9                                      AT TACOMA

10   LIGHTHOUSE RESOURCES INC., et al.,          NO. 3:18-cv-05005-RJB

11                 Plaintiffs,

12          and                                  DEFENDANTS' MOTION FOR
                                                 SUMMARY JUDGMENT ON
     BNSF RAILWAY COMPANY,                        PREEMPTION ISSUES
13
                   Plaintiff-Intervenor,
14                                               NOTE ON MOTION CALENDAR:
            v.                                   SEPTEMBER 7, 2018
     JAY INSLEE, et al.,
15
                   Defendants,
16
            and
17
     WASHINGTON ENVIRONMENTAL
18   COUNCIL, et al.,

19                 Defendant-Intervenors.

20

21

22

23

24

25

26

ATTORNEY GENERAL OF WASHINGTON
Ecology Division
PO Box 40117
Olympia, WA 98504-0117
360-586-6770

**TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................................................. 1

II.    FACTS IN SUPPORT OF MOTION ................................................................. 1

III.   STATEMENT OF ISSUES .................................................................................. 5

IV.    ARGUMENT ........................................................................................................ 5

       A.    Summary Judgment Standard ................................................................. 5

       B.    The State's Decisions Are Not Preempted by Either the Interstate Commerce
             Commission Termination Act or the Ports and Waterways Safety Act ................... 6

             1.    The Interstate Commerce Commission Termination Act does not apply
                   because Millennium is not a rail carrier or acting under the auspices of a
                   rail carrier ........................................................................................ 7

             2.    The Ports and Waterways Safety Act does not preempt State decisions to
                   deny Millennium's permit for an export terminal ........................................... 11

       C.    Plaintiffs Fail the Redressability Prong for Article III Standing Because the
             State Had Valid Reasons for Its Section 401 Decision That Have Nothing to
             Do With Vessel or Rail Impacts .............................................................. 13

       D.    Lighthouse's Preemption Claims Against Defendant Commissioner Franz
             Should Be Dismissed Because They Lack a Factual Basis ............................... 16

V.     CONCLUSION .................................................................................................. 17

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT ON
PREEMPTION ISSUES  (3:18-cv-
05005-RJB)

i

ATTORNEY GENERAL OF WASHINGTON
Ecology Division
PO Box 40117
Olympia, WA 98504-0117
360-586-6770

**TABLE OF AUTHORITIES**

<u>Cases</u>

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ............................................................................................................ 6

*Beveridge v. Lewis*,
939 F.2d 859 (9th Cir. 1991) ............................................................................................ 13

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ............................................................................................................ 5

*CFNR Operating Co. v. City of Am. Canyon*,
282 F. Supp. 2d 1114 (N.D. Cal. 2003) ............................................................................ 9

*Chevron U.S.A., Inc. v. Hammond*,
726 F.2d 483 (9th Cir. 1984) ...................................................................................... 11, 13

*Coal. of Watershed Towns v. U.S. Envtl. Prot. Agency*,
552 F.3d 216 (2d Cir. 2008) ............................................................................................ 14

*Coffman v. Breeze Corp.*,
323 U.S. 316 (1945) .......................................................................................................... 16

*Constitution Pipeline Co. v. N.Y. State Dep't of Envtl. Conservation*,
868 F.3d 87 (2d Cir. 2017) .............................................................................................. 15

*DaimlerChrysler Corp. v. Cuno*,
547 U.S. 332 (2006) .......................................................................................................... 14

*Desert Water Agency v. U.S. Dep't of the Interior*,
849 F.3d 1250 (9th Cir. 2017) ......................................................................................... 16

*Donahue v. City of Boston*,
304 F.3d 110 (1st Cir. 2002) ........................................................................................... 15

*English v. Gen. Elec. Co.*,
496 U.S. 72 (1990) .............................................................................................................. 7

*Fednav, Ltd. v. Chester*,
547 F.3d 607 (6th Cir. 2008) ........................................................................................... 12

*Fla. E. Coast Ry. Co. v. City of W. Palm Beach*,
266 F.3d 1324 (11th Cir. 2001) ..................................................................................... 8, 9

*Fla. Lime & Avocado Growers, Inc. v. Paul*,
373 U.S. 132 (1963) ............................................................................................................ 7

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT ON
PREEMPTION ISSUES  (3:18-cv-
05005-RJB)

ii

ATTORNEY GENERAL OF WASHINGTON
Ecology Division
PO Box 40117
Olympia, WA 98504-0117
360-586-6770

*Gade v. Nat'l Solid Wastes Mgmt. Ass'n,*
    505 U.S. 88 (1992) ............................................................................ 6

*Gerlinger v. Amazon.com, Inc., Borders Group, Inc.,*
    526 F.3d 1253 (9th Cir. 2008) ...................................................... 16

*Hells Canyon Pres. Council v. U.S. Forest Service,*
    593 F.3d 923 (9th Cir. 2010) .................................................. 14, 15

*Hi-Tech Trans, LLC v. New Jersey,*
    382 F.3d 295 (3d Cir. 2004) ............................................... 8, 9, 11

*Hillsborough Cty. v. Automated Med. Labs., Inc.,*
    471 U.S. 707 (1985) ...................................................................... 6

*Hines v. Davidowitz,*
    312 U.S. 52 (1941) ........................................................................ 7

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992) .................................................................... 14

*Medtronic Inc. v. Lohr,*
    518 U.S. 470 (1996) ...................................................................... 6

*N.Y. & Atl. Ry. Co. v. Surface Transp. Bd.,*
    635 F.3d 66 (2d Cir. 2011) ........................................................ 8, 9

*Or. Coast Scenic R.R., LLC v. Or. Dep't of State Lands,*
    841 F.3d 1069 (9th Cir. 2016) .................................................. 7, 8

*Polygon Corp. v. City of Seattle,*
    578 P.2d 1309 (1978) .................................................................... 3

*Port of Seattle v. Pollution Control Hearings Bd.,*
    90 P.3d 659 (2004) ................................................................. 4, 15

*Portland Pipe Line Corp. v. City of S. Portland,*
    288 F. Supp. 3d 321 (D. Me. 2017) ........................................... 12

*PUD No. 1 of Jefferson Cty. v. Dep't of Ecology,*
    511 U.S. 700 (1994) ...................................................................... 3

*Ray v. Atl. Richfield Co.,*
    435 U.S. 151 (1978) .................................................................... 11

*Rice v. Santa Fe Elevator Corp.,*
    331 U.S. 218 (1947) ...................................................................... 7

*Steel Co. v. Citizens for a Better Env't,*
    523 U.S. 83 (1998) ...................................................................... 14

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT ON
PREEMPTION ISSUES  (3:18-cv-
05005-RJB)

iii

ATTORNEY GENERAL OF WASHINGTON
Ecology Division
PO Box 40117
Olympia, WA 98504-0117
360-586-6770

*United States v. Locke*,
  529 U.S. 89 (2000)........................................................................... 11, 12, 13

### Surface Transportation Board Orders

*SEA-3 Inc.*,
  S.T.B. No. FD 35853 (2015), 2015 WL 1215490 .................................... 9

*Valero Ref. Co.*,
  S.T.B. No. FD 36036 (2016), 2016 WL 5904757 ................................ 8, 10

### Federal Statutes

33 U.S.C. §§ 1221–27 ......................................................................... 11

46 U.S.C. § 2101(14) .......................................................................... 12

46 U.S.C. § 2101(39) .......................................................................... 12

46 U.S.C. § 3702(a) ............................................................................ 12

46 U.S.C. § 3703(a) ............................................................................ 11

49 U.S.C. § 10102(5) ............................................................................ 7

49 U.S.C. § 10501(a)(1) ........................................................................ 8

49 U.S.C. § 10501(b) ............................................................................ 7

### State Statutes

Wash. Rev. Code § 43.21C.060 ............................................................. 3

### Federal Regulations

33 C.F.R. §§ 161.1 –.70 ...................................................................... 13

### State Regulations

Wash. Admin. Code § 173-802-110 ....................................................... 3

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT ON
PREEMPTION ISSUES  (3:18-cv-
05005-RJB)

iv

ATTORNEY GENERAL OF WASHINGTON
Ecology Division
PO Box 40117
Olympia, WA 98504-0117
360-586-6770

## Rules

Fed. R. Civ. P. 56(c) .................................................................................................. 5

## Other Authorities

Richard L. Settle, *The Washington State Environmental Policy Act: A Legal & Policy Analysis*
§ 3.01 (2014)........................................................................................................ 3

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT ON
PREEMPTION ISSUES  (3:18-cv-
05005-RJB)

v

ATTORNEY GENERAL OF WASHINGTON
Ecology Division
PO Box 40117
Olympia, WA 98504-0117
360-586-6770

# I.    INTRODUCTION

Plaintiff Lighthouse Resources, Inc., and its subsidiary, Millennium Bulk Terminals-Longview (collectively, Lighthouse), seek to construct a large coal export terminal on the banks of the Columbia River. Defendant State officials denied a water quality certificate and an aquatic lands sublease request necessary to construct the terminal. Lighthouse and Intervenor BNSF Railway Company (BNSF) contend that one of the State's decisions—the water quality certificate denial—is preempted by federal law because it relied in part on the environmental impacts of the increased vessel and rail traffic the proposed facility would cause. This claim must be dismissed, however, because (1) neither of the federal laws that Lighthouse relies on applies to Millennium's proposed project; and (2) in any event, the Court cannot redress Lighthouse's claimed injury by ruling on its preemption claims because the State had valid bases for the certificate denial that have nothing to do with rail or vessel traffic. In addition, the Court should dismiss these claims as to Defendant Commissioner Franz, because she did not rely on vessel or rail impacts in making her leasing decisions.

# II.    FACTS IN SUPPORT OF MOTION

Millennium's proposed coal export facility would be the largest coal export terminal in North America, capable at full build-out of exporting 44 million metric tons of coal per year. *See* Declaration of Thomas J. Young in Support of Defendants' Motion for Summary Judgment on Preemption Issues (Young Decl.) Ex. 1 at § S.1. Coal would be brought to the site by train from the Powder River basin in Montana and Wyoming, and the Uinta basin in Utah and Colorado, stockpiled on site, and then loaded on to ocean-going vessels for transport to Asia. At full build-out, eight trains—each over a mile long—would enter and depart from the site each day. Eight hundred and forty ships would call at the site each year, totaling 1680 trips

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT ON
PREEMPTION ISSUES  (3:18-cv-
05005-RJB)

ATTORNEY GENERAL OF WASHINGTON
Ecology Division
PO Box 40117
Olympia, WA 98504-0117
360-586-6770

up and down the Columbia River per year. At full build-out, the vessel traffic associated with the facility would account for approximately one-quarter of all the vessel traffic on the Columbia River. Young Decl. Ex. 1 at § S.4.1.

The State Department of Ecology, acting as a co-lead agency with Cowlitz County under the State Environmental Policy Act (SEPA), issued an Environmental Impact Statement (EIS) analyzing the project and its impacts in detail. *See* Young Decl. Ex. 1. Among other things, the EIS concluded the project would have significant, adverse, unavoidable impacts in nine resource areas. These impacts are: (1) an increase in the cancer risk rate in Cowlitz County from the emission of diesel particulates; (2) serious traffic delays[1] at several level crossings near the site; (3) severe noise impacts at approximately 60 residences in the vicinity from train horns; (4) a 22% increase in the rate of rail accidents in the state; (5) a disproportionate impact on low income and minority neighborhoods; (6) destruction of a historic district; (7) blockage of access to at least 20 federally established tribal fishing sites along the Columbia River, as well as an unquantified impact on fish survival; (8) an increase in the rate of vessel accidents on the Columbia River by approximately 2.8 incidents per year; and (9) capacity exceedances on portions of the rail line in Washington State. *Id*. at § S.7.

The project requires dredging of the Columbia River to accommodate the ocean-going vessels that would call at the site, and construction of two large docks for berthing and loading coal. To conduct these activities, Millennium must obtain a dredge and fill permit from the Army Corps of Engineers under section 404 of the Clean Water Act. To obtain the federal permit, Millennium must in turn obtain a water quality certificate from the State under

---

[1] The total gate downtime at all crossings affected by the project would be 130 minutes on an average day. *See* Dkt. 1-1, at 6.

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT ON
PREEMPTION ISSUES  (3:18-cv-
05005-RJB)

2

ATTORNEY GENERAL OF WASHINGTON
Ecology Division
PO Box 40117
Olympia, WA 98504-0117
360-586-6770

section 401 of the Act. *See* Young Decl. Ex. 1 at § S.8. To obtain the certificate, Millennium was required to demonstrate reasonable assurance of compliance with state water quality standards. *See generally PUD No. 1 of Jefferson Cty. v. Dep't of Ecology*, 511 U.S. 700 (1994).

Ecology denied Millennium's request for water quality certification on two separate grounds. *See* Dkt. 1-1. First, Ecology concluded that the project's significant, adverse, unavoidable impacts were inconsistent with the state's environmental policies expressed in state administrative code, Wash. Admin. Code § 173-802-110. Relying on the authority conferred by SEPA, Wash. Rev. Code § 43.21C.060, Ecology exercised its discretion to deny the water quality certificate based on the project's impacts.[2] Dkt. 1-1 at 4-14. Second, Ecology denied the water quality certificate based on Millennium's failure to demonstrate reasonable assurance of compliance with state water quality standards. *Id.* at 14–19. In this proceeding, Lighthouse and BNSF challenge only the first of these grounds; Lighthouse and BNSF make no mention of, and do not challenge, the water quality grounds for denial. *See* Dkt. 1 ¶¶164--66; Dkt. 121 ¶63.

Separately from Ecology's denial of the water quality certificate, the State Department of Natural Resources (DNR) denied Millennium's request for a sublease of state-owned aquatic lands upon which the facility would be partially constructed. Young Decl. Ex. 2. DNR denied the sublease request because of concerns about the financial viability of the project and Millennium's failure to provide financial information to DNR. *Id.* DNR's denial of the sublease had nothing to do with vessel or rail impacts. Subsequently, DNR also denied without

---

[2] The statute—referred to as "substantive SEPA authority"—allows a permitting agency to deny permits for a project based on its significant, adverse, unavoidable, environmental impacts. *See Polygon Corp. v. City of Seattle*, 578 P.2d 1309 (1978). In this respect, Washington State's SEPA differs from NEPA, because NEPA is purely procedural and has no substantive effect. *See generally* Richard L. Settle, *The Washington State Environmental Policy Act: A Legal & Policy Analysis* § 3.01 (2014).

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT ON
PREEMPTION ISSUES  (3:18-cv-
05005-RJB)

3

ATTORNEY GENERAL OF WASHINGTON
Ecology Division
PO Box 40117
Olympia, WA 98504-0117
360-586-6770

prejudice Millennium's request to construct the docks and other facilities associated with the project on state-owned aquatic lands under the terms of the existing lease. Dkt. 1-2. Millennium has not appealed this latter decision. In any case, the decision did not rely on vessel or rail impacts and instead relied on the inconsistency of the proposal with the existing lease, Millennium's failure to obtain a sublease, and Millennium's failure to obtain water quality certification. *Id.* at 2–10.[3] Thus, Lighthouse's preemption claims are not applicable to either of DNR's decisions.

Pursuant to state law, Millennium appealed Ecology's section 401 denial to the State Pollution Control Hearings Board, an administrative agency tasked with hearing appeals of water quality permits. Dkt. 21-5; *see generally Port of Seattle v. Pollution Control Hearings Bd.*, 90 P.3d 659, 670–74 (2004) (describing the role of the Board in a section 401 certificate appeal). Millennium also challenged Ecology's section 401 denial in Cowlitz County Superior Court. Dkt. 21-8. The superior court dismissed Millennium's challenge in that court for failure to exhaust administrative remedies, and Millennium appealed. Young Decl. Exs. 4, 5. The Pollution Control Hearings Board, meanwhile, heard oral argument on cross motions for summary judgment and recently issued a decision upholding Ecology's denial on substantive SEPA grounds. Young Decl. Ex. 6. Because the Board upheld the denial under SEPA, the Board did not reach the issues pertaining to reasonable assurance under section 401 of the Clean Water Act. *Id.*

---

[3] As to the latter, DNR indicated that the water quality concerns identified in Ecology's denial were relevant to its lease decision and needed to be resolved before it could authorize construction. Dkt. 1-2, at 8–10. DNR's decision does not mention rail or vessel impacts, except in two brief paragraphs about the blockage of access to the Columbia River from project related trains. *Id.* at 9.

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT ON
PREEMPTION ISSUES  (3:18-cv-
05005-RJB)

4

ATTORNEY GENERAL OF WASHINGTON
Ecology Division
PO Box 40117
Olympia, WA 98504-0117
360-586-6770

Millennium also challenged DNR's sublease denial in Cowlitz County Superior Court. Dkt. 21-1. The superior court ordered DNR to reconsider the denial, and DNR appealed. Dkts. 21-3, 21-4. The matter is currently pending in the State Court of Appeals.

## III.     STATEMENT OF ISSUES

1.     Does the Interstate Commerce Commission Termination Act (ICCTA) preempt the State's permitting or leasing decisions regarding the Millennium coal export project, when the project is not being undertaken by a rail carrier or under the auspices of a rail carrier?

2.     Does the Ports and Waterways Safety Act (PWSA) preempt the State's permitting or leasing decisions regarding the Millennium coal export project, when the State's decisions do not regulate vessel traffic or tank vessels in any way?

3.     Do Plaintiffs fail the redressability prong for Article III standing, when the State had valid reasons for making its permitting decisions that have nothing to do with rail or vessel transport?

4.     Should Plaintiffs' preemption claims against Commissioner Franz be dismissed when DNR did not rely on vessel or rail impacts in making its leasing decisions regarding the project?

## IV.     ARGUMENT

### A.     Summary Judgment Standard

Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets its initial burden, the opposing party must then set forth specific facts showing that there is some

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT ON
PREEMPTION ISSUES  (3:18-cv-
05005-RJB)

5

genuine issue for trial in order to defeat the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

**B.     The State's Decisions Are Not Preempted by Either the Interstate Commerce Commission Termination Act or the Ports and Waterways Safety Act**

Plaintiff Lighthouse and BNSF argue that Ecology's section 401 decision is preempted by the Interstate Commerce Commission Termination Act (ICCTA) and the Ports and Waterways Safety Act (PWSA). In fact, Ecology's decision is not preempted by either of these laws because (1) the ICCTA preempts only state regulation of rail carriers, and neither Millennium nor Lighthouse are rail carriers; and (2) the PWSA preempts only state regulation of vessels and vessel traffic, which Ecology's decision does not do. In denying water quality certification to Millennium's proposed coal export terminal, Ecology relied in part on the impacts of the rail and vessel traffic that would serve the facility, but this does not amount to regulation of that rail or vessel traffic. Consequently there is no preemption.

Federal preemption is, first and foremost, a question of congressional intent. *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 96 (1992). The doctrine is rooted in the Supremacy Clause of the U.S. Constitution: "under the Supremacy Clause, from which our pre-emption doctrine is derived, 'any state law, however clearly within a State's acknowledged power, which interferes with or is contrary to federal law, must yield.' " *Gade*, 505 U.S. at 108 (citation omitted). In areas where states have traditionally regulated, there is a presumption against preemption. "[W]e 'start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.' " *Medtronic Inc. v. Lohr*, 518 U.S. 470, 485 (1996) (quoting *Hillsborough Cty. v. Automated Med. Labs., Inc.*, 471 U.S. 707, 715–16 (1985)).

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON PREEMPTION ISSUES  (3:18-cv-05005-RJB)

6

ATTORNEY GENERAL OF WASHINGTON
Ecology Division
PO Box 40117
Olympia, WA 98504-0117
360-586-6770

Preemption may be either express or implied. Express preemption occurs only when a federal statute explicitly confirms Congress's intention to preempt state law. *English v. Gen. Elec. Co.*, 496 U.S. 72 (1990). Implied preemption can occur in either of two ways: either by field preemption or by conflict preemption. Field preemption exists if "the nature of the regulated subject matter permits no other conclusion, or . . . Congress has unmistakably so ordained." *Fla. Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142 (1963). Congress's intent to supersede state law may be found from a scheme of federal regulation "so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it." *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947). Conflict preemption, on the other hand, occurs only if compliance with both state and federal regulation is physically impossible or state law stands as an obstacle to achievement of federal objectives. *Fla. Lime & Avocado Growers*, 373 U.S. at 142–43; *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941).

**1.    The Interstate Commerce Commission Termination Act does not apply because Millennium is not a rail carrier or acting under the auspices of a rail carrier**

Plaintiffs allege first that the Defendants' actions are preempted by the Interstate Commerce Commission Termination Act (ICCTA). Dkt. 1 ¶¶216–19. The ICCTA, passed in 1995, was intended to preempt state economic regulation of railroads. *Or. Coast Scenic R.R., LLC v. Or. Dep't of State Lands*, 841 F.3d 1069, 1072 (9th Cir. 2016). The Act confers exclusive jurisdiction over transportation by rail carriers, and the construction, acquisition, operation, abandonment, and discontinuance of tracks, to the Surface Transportation Board. 49 U.S.C. § 10501(b) (2016). The Act defines a "rail carrier" in pertinent part as "a person providing common carrier railroad transportation for compensation." 49 U.S.C. § 10102(5) (2016).

ATTORNEY GENERAL OF WASHINGTON
Ecology Division
PO Box 40117
Olympia, WA 98504-0117
360-586-6770

As a threshold matter, ICCTA preemption can apply only if the activity regulated falls within the statutory jurisdiction of the Surface Transportation Board. *Or. Coast Scenic R.R.*, 841 F.3d at 1072. Here, the regulated activity is Millennium's proposal to construct an export terminal in Cowlitz County. This activity does not fall within the Board's jurisdiction because it does not constitute "transportation by rail carrier"—the prerequisite to Board jurisdiction. *Id.* (citing 49 U.S.C. § 10501(a)(1)). Neither Lighthouse nor Millennium are "rail carriers" as defined by the Act nor does the project constitute "transportation by a rail carrier." Although BNSF is a rail carrier, BNSF has made it clear that "the BNSF rail system is not part of the Project and no permits are required of BNSF for this Project." Dkt. 121 ¶45; *see also* Young Decl. Ex. 3.

Under these statutory provisions, the Surface Transportation Board has long held that its jurisdiction extends only to activities conducted by a rail carrier or under the auspices of a rail carrier. *See, e.g.*, *Valero Ref. Co.*, S.T.B. No. FD 36036 (Sept. 20, 2016), 2016 WL 5904757, at *3.[4] Courts answering the same question agree. *Or. Coast Scenic R.R.*, 841 F.3d at 1073–74 (Board had jurisdiction over entity contracting with railroad to perform rail repairs); *N.Y. & Atl. Ry. Co. v. Surface Transp. Bd.*, 635 F.3d 66, 71–75 (2d Cir. 2011) (no jurisdiction over transloading facility that was not operated by a rail carrier or on behalf of a rail carrier); *Hi-Tech Trans, LLC v. New Jersey*, 382 F.3d 295, 308–09 (3d Cir. 2004) (no jurisdiction over solid waste disposal facility leasing land from railroad but not operating facility on behalf of railroad); *Fla. E. Coast Ry. Co. v. City of W. Palm Beach*, 266 F.3d 1324, 1332–37 (11th Cir. 2001) (no jurisdiction over zoning decision that prohibited facility on land

---

[4] Surface Transportation Board decisions provide guidance in determining the scope of ICCTA preemption and are accorded *Chevron* deference within the Ninth Circuit. *Or. Coast Scenic R.R.*, 841 F.3d at 1074.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON PREEMPTION ISSUES  (3:18-cv-05005-RJB)

8

ATTORNEY GENERAL OF WASHINGTON
Ecology Division
PO Box 40117
Olympia, WA 98504-0117
360-586-6770

leased by the railroad). In so holding, courts have noted that an alternative interpretation would allow any entity to claim ICCTA preemption if the entity handles goods that are, at some point, carried by rail. *Hi-Tech*, 382 F.3d at 309. However, "[t]he language of the ICCTA pre-emption provision in no way suggests that local regulation was to be so thoroughly disabled." *Fla. E. Coast Ry.*, 266 F.3d at 1332.

Millennium proposes to operate a transloading facility that will accept goods by rail and load those goods onto vessels for shipping. Millennium does not claim to be a rail carrier nor does it seek to operate its facility on behalf of a rail carrier. ICCTA is not implicated.

The crux of Plaintiffs' claim is that ICCTA preemption applies because the Defendants cited rail impacts as one reason to deny Millennium's permit applications. Dkt. 1 ¶¶165, 177; Dkt. 121 ¶95. Courts have resoundingly rejected similar claims by transloading facilities. *Hi-Tech*, 382 F.3d at 310 (rejecting such a claim as "untenable" and "meritless"); *N.Y. & Atl. Ry.*, 635 F.3d at 71–75 (no ICCTA preemption when rail carrier simply transported goods to and from transloading facility); *CFNR Operating Co. v. City of Am. Canyon*, 282 F. Supp. 2d 1114, 1118–19 (N.D. Cal. 2003) (no ICCTA preemption when rail carrier simply carries goods to bulk transfer operator).

These decisions are consistent with the Surface Transportation Board's own interpretation of its jurisdiction, as extending to activities at transloading facilities only if: (1) those activities are performed by a rail carrier; (2) the activities are performed by a third party acing as the rail carrier's agent; or (3) the rail carrier exerts control over the third party's operations. *SEA-3 Inc.*, S.T.B. No. FD 35853 (Mar. 16, 2015), 2015 WL 1215490, at *4. If none of these circumstances apply, there is no ICCTA preemption. *Id.* at *5.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON PREEMPTION ISSUES  (3:18-cv-05005-RJB)

9

ATTORNEY GENERAL OF WASHINGTON
Ecology Division
PO Box 40117
Olympia, WA 98504-0117
360-586-6770

The Board recently reiterated this holding in a case involving a similar fact pattern to the present case. *Valero Ref. Co.*, 2016 WL 5904757. Valero, a non-rail carrier, proposed to build a facility to offload crude oil from trains. *Id.* at *1. It submitted a land use permit application to the City of Benicia, and the City's environmental impact report found environmental impacts associated with rail operations. *Id.* The City did not propose mitigation for the rail impacts, having concluded that such mitigation measures would likely be preempted. *Id.* The City then stayed its decision on the permit while Valero sought declaratory relief from the Surface Transportation Board.

Valero sought a declaration from the Board that the City could not rely on rail impacts as a basis for permit denial because doing so would be preempted. *Id.* The Board disagreed, finding that permit denial by the City would not be preempted because Valero is neither a rail carrier nor performing functions on behalf of a rail carrier. *Id.* at *3. The Board reached this conclusion even though the City might have been preempted from mitigating for the same impacts that formed the basis for the City's denial. *Id.* at *4. Whereas mitigation might have unreasonably interfered with a rail carrier's operations, and therefore been preempted, denial of a permit to a non-rail carrier does not raise similar preemption concerns. *Id.*

Here, Ecology denied a section 401 certification to Millennium based on numerous environmental impacts, including rail impacts, and on Millennium's failure to demonstrate reasonable assurance that its activities would not violate water quality standards. Dkt. 1-1, at 6-19. DNR denied a sublease to Millennium based on DNR's conclusion that Millennium failed to provide sufficient information about its finances. Young Decl. Ex. 2. DNR also denied, without prejudice, Millennium's request to make alterations to the site under the

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT ON
PREEMPTION ISSUES  (3:18-cv-
05005-RJB)

ATTORNEY GENERAL OF WASHINGTON
Ecology Division
PO Box 40117
Olympia, WA 98504-0117
360-586-6770

existing lease because the proposed alterations were not consistent with the lease. Dkt. 1-2, at 3–6. None of these denials regulate transportation by a rail carrier because Millennium is not a "rail carrier" within the meaning of the ICCTA. Plaintiffs' ICCTA preemption claim therefore fails and should be dismissed.

2.   **The Ports and Waterways Safety Act does not preempt State decisions to deny Millennium's permit for an export terminal**

Millennium also alleges preemption under the Ports and Waterways Safety Act (PWSA) because Ecology cited vessel impacts as one of nine bases for denying Millennium's section 401 certification under SEPA. Dkt. 1 ¶¶220–23. This claim, like Millennium's ICCTA claim, is "untenable" and "meritless." *Hi-Tech*, 382 F.3d at 310.

The PWSA's two titles aim to ensure vessel safety and protection of navigable waters and shorelines. *Ray v. Atl. Richfield Co.*, 435 U.S. 151, 161 (1978). Title I focuses on traffic control at local ports. *Ray*, 435 U.S. at 161 (citing 33 U.S.C. §§ 1221–27). Title II covers "design, construction, alteration, repair, maintenance, operation, equipping, personnel qualification, and manning" of tanker vessels. *United States v. Locke*, 529 U.S. 89, 111 (2000) (citing 46 U.S.C. § 3703(a)).

The PWSA lacks an express preemption provision. *Chevron U.S.A., Inc. v. Hammond*, 726 F.2d 483, 487 (9th Cir. 1984). Instead, any preemption under the PWSA must be implied either through conflict or field preemption. States are preempted from adopting laws or regulations that fall within the exclusive federal field of Title II. *Locke*, 529 U.S. at 111. In contrast, state regulations implicating Title I are analyzed under conflict preemption principles. *Id.* at 109. Consistent with Title I, states may adopt regulations that relate to vessel traffic and

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT ON
PREEMPTION ISSUES  (3:18-cv-
05005-RJB)

ATTORNEY GENERAL OF WASHINGTON
Ecology Division
PO Box 40117
Olympia, WA 98504-0117
360-586-6770

are directed at local circumstances unless the Coast Guard has already adopted regulations on the same subject or determined that particular regulation is unnecessary. *Id.*

The State's decision to deny approval for Millennium's export terminal does not implicate Title I or II because the State does not seek to regulate vessels or vessel traffic. Millennium's argument appears to be that denying a permit application based in any part on vessel impacts is akin to preempted regulation of vessels. Neither the language of the PWSA nor case law supports that interpretation. *See Portland Pipe Line Corp. v. City of S. Portland*, 288 F. Supp. 3d 321, 437–40 (D. Me. 2017) (holding that city ordinance banning certain crude oil loading facilities was not preempted by the PWSA).

First, the field occupied by Title II relates only to the regulation of tank vessels. 46 U.S.C. § 3702(a) (2016). A "tank vessel" is "a vessel that is constructed or adapted to carry, or that carries, oil or hazardous material in bulk as cargo or cargo residue." 46 U.S.C. § 2101(39) (2016). "Hazardous material" is then defined as "a *liquid* material or substance that is: (A) flammable or combustible; (B) designated a hazardous substance under section 311(b) of the [Clean Water Act]; or (C) designated a hazardous material under [the Hazardous Materials Transportation Act]." 46 U.S.C. § 2101(14) (2016) (emphasis added). The coal that Millennium seeks to transport is not a liquid hazardous material and the vessels that would transport the coal are not tank vessels. Thus, Title II and field preemption do not apply. *See Fednav, Ltd. v. Chester*, 547 F.3d 607, 622 (6th Cir. 2008) (Title II does not apply to non-tanker vessels).

That leaves conflict preemption. Under Title I of the PWSA, state regulation of vessel traffic is permissible if aimed at addressing local conditions and the Coast Guard has neither

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON PREEMPTION ISSUES  (3:18-cv-05005-RJB)

ATTORNEY GENERAL OF WASHINGTON
Ecology Division
PO Box 40117
Olympia, WA 98504-0117
360-586-6770

adopted a regulation on the same topic nor determined that regulation is unnecessary. *Locke*, 529 U.S. at 109. Allowing states to exercise their "vast residual powers" under Title I recognizes the "important role for States and localities in the regulation of the Nation's waterways and ports." *Id*. Thus, the Ninth Circuit has upheld state and local laws that regulate aspects of vessel safety absent a clear indication that Congress intended to preempt such regulation. *Beveridge v. Lewis*, 939 F.2d 859, 864–65 (9th Cir. 1991) (upholding city ordinance that prohibited the mooring or anchoring of vessels in certain areas during winter); *Chevron*, 726 F.2d at 495–501 (upholding Alaska statute that prohibited nearshore discharge of ballast water by oil tankers).

The State's decisions regarding Millennium's proposal do not regulate vessel traffic in any way. Also, the Coast Guard has not promulgated vessel traffic regulations for the Columbia River nor has the Coast Guard designated the Columbia River as an area that does not need such regulations. 33 C.F.R. §§ 161.1 –.70 (2017). Thus, even if the State had adopted vessel traffic regulations for the Columbia River, which it has not, such regulations would not be preempted. Millennium's PWSA preemption claim fails both factually and legally. This claim should be dismissed.

**C.      Plaintiffs Fail the Redressability Prong for Article III Standing Because the State Had Valid Reasons for Its Section 401 Decision That Have Nothing to Do With Vessel or Rail Impacts**

As discussed above, Ecology denied Millennium's request for section 401 certification on two separate and independent grounds. Only the first ground relied in part on vessel and rail impacts. The second ground was Millennium's failure to demonstrate reasonable assurance of compliance with state water quality standards. Dkt. 1-1, at 14–19. These grounds included failure to submit an adequate wetlands mitigation plan; failure to submit adequate stormwater

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT ON
PREEMPTION ISSUES  (3:18-cv-
05005-RJB)

13

ATTORNEY GENERAL OF WASHINGTON
Ecology Division
PO Box 40117
Olympia, WA 98504-0117
360-586-6770

and wastewater characterization and treatment information; failure to demonstrate compliance with all known, available, and reasonable methods of prevention, control, and treatment (AKART); failure to demonstrate compliance with the state's anti-degradation standard; and failure to demonstrate adequate water rights. None of these grounds have anything to do with rail or vessel transportation and none is preempted under any conceivable interpretation of the ICCTA or the PWSA. Lighthouse and BNSF's preemption claims are simply inapplicable to them.

The existence of these independent and adequate grounds for the section 401 decision mean that Plaintiffs' preemption claims are not justiciable. In order to be justiciable, Plaintiffs must have Article III standing to bring the claims. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). Plaintiffs must demonstrate standing as to each claim alleged and each form of relief sought. *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 335 (2006). A key element of standing is redressability; that is, there must be a likelihood that the plaintiff's injury will be redressed by a favorable court decision. *Lujan*, 504 U.S. at 561. When the plaintiff's claimed injury cannot be remedied by the court, redressability is lacking. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998) ("[r]elief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court; that is the very essence of the redressability requirement"); *see also Hells Canyon Pres. Council v. U.S. Forest Service*, 593 F.3d 923, 929–30 (9th Cir. 2010) (where the claimed relief would be "worthless," standing is lacking); *Coal. of Watershed Towns v. U.S. Envtl. Prot. Agency*, 552 F.3d 216 (2d Cir. 2008) (where state would likely have promulgated the same regulation even if requested relief were granted, plaintiff lacked standing).

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON PREEMPTION ISSUES (3:18-cv-05005-RJB)

14

ATTORNEY GENERAL OF WASHINGTON
Ecology Division
PO Box 40117
Olympia, WA 98504-0117
360-586-6770

Here, Plaintiffs allege injury based on the denial of the section 401 certificate. *See* Dkt. 1 ¶¶161–72; Dkt. 1-1; Dkt. 121 ¶¶59–63. The Court cannot remedy this claimed injury by ruling on Plaintiffs' preemption claims because those claims do not apply to all the grounds for the denial. At least one-half or more of the grounds for denial have nothing to do with rail or vessel transport. Even if the Court concluded that some or all of the State's SEPA grounds for denying the certificate are preempted, the State's denial of the certificate would still stand. There is no question that the State may deny certification under section 401 of the Clean Water Act if the applicant fails to demonstrate reasonable assurance of compliance with state water quality standards. *See, e.g.*, *Constitution Pipeline Co. v. N.Y. State Dep't of Envtl. Conservation*, 868 F.3d 87 (2d Cir. 2017); *Port of Seattle v. Pollution Control Hearings Bd.*, 90 P.3d 659 (2004). Thus, the Court cannot grant Lighthouse's requested relief, which is to declare Ecology's denial of section 401 certification "preempted by ICCTA and the PWSA." Dkt. 1, at 51 ¶C. Nor can the Court grant BNSF's requested relief, which is to "vacat[e] any and all of the Defendant's unconstitutional and illegal decisions regarding the Project . . . ." Dkt. 121 ¶132.

Even if preemption applied here (which it does not), it would not constitute a basis to "vacate" Ecology's section 401 decision. At most, the Court could declare preempted some of the grounds relied on by the state in denying the certificate. Such a ruling, however, would be "worthless" to the Plaintiffs because it would not change the denial. *Hells Canyon Pres. Council*, 593 F.3d at 930. Where the state would have made the same decision regardless of the improper grounds challenged in the complaint, plaintiff's injury is not redressable and he or she lacks standing. *See Donahue v. City of Boston*, 304 F.3d 110, 117–18 (1st Cir. 2002). In

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT ON
PREEMPTION ISSUES  (3:18-cv-
05005-RJB)

ATTORNEY GENERAL OF WASHINGTON
Ecology Division
PO Box 40117
Olympia, WA 98504-0117
360-586-6770

effect, Plaintiffs ask the Court to issue an advisory opinion regarding preemption, which this

Court cannot do. *See, e.g.*, *Desert Water Agency v. U.S. Dep't of the Interior*, 849 F.3d 1250,

1258 (9th Cir. 2017) ("[t]he declaratory judgment procedure . . . may not be made the medium

for securing an advisory opinion . . . .") (quoting *Coffman v. Breeze Corp.*, 323 U.S. 316, 324

(1945)). Plaintiffs' lack of standing constitutes another basis to grant summary judgment to the

Defendants.[5]

**D.**     **Lighthouse's Preemption Claims Against Defendant Commissioner Franz Should Be Dismissed Because They Lack a Factual Basis**

As noted above, the State Department of Natural Resources did not rely on vessel or

rail impacts in making either of its decisions at issue in this matter. Consequently, regardless of

whether preemption under the ICCTA or PWSA applies here, Plaintiffs' preemption claims

against Commissioner Franz should be rejected as without any factual basis.

In denying Millennium's sublease request, DNR relied on Millennium's failure to

submit financial information. Young Decl. Ex. 2. In subsequently denying Millennium

authorization to construct project facilities, DNR relied on the inconsistency of the proposal

with the terms of the existing lease, Millennium's failure to obtain a sublease, and

Millennium's failure to obtain section 401 certification from Ecology. Dkt. 1-2. As to the last

of these, DNR indicated that the water quality concerns raised by Ecology's decision were

relevant to its lease decision, and needed to be resolved before it could authorize construction.

*Id.* at 8–10. Except for a single mention in its second decision of access to the Columbia River

---

[5] The Court previously ruled that BNSF had standing for purposes of intervention in this matter, but the Court expressly limited this ruling to the pleadings filed at that time, and specifically, BNSF's Complaint. *See* Order on Motion of BNSF Railway Company to Intervene as Plaintiff, Dkt. 47, at 10. On summary judgment, neither BNSF nor Lighthouse can rely solely on their complaints to establish standing. *Gerlinger v. Amazon.com, Inc., Borders Group, Inc.*, 526 F.3d 1253, 1255–56 (9th Cir. 2008).

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT ON
PREEMPTION ISSUES  (3:18-cv-
05005-RJB)

16

ATTORNEY GENERAL OF WASHINGTON
Ecology Division
PO Box 40117
Olympia, WA 98504-0117
360-586-6770

being blocked by project related trains, DNR did not rely on vessel or rail impacts as a basis for either of its decisions. Young Decl. Ex. 2 (denying sublease); Dkt. 1-2 (denying authorization to construct improvements). Consequently, Lighthouse and BNSF's preemption claims against Commissioner Franz should be dismissed.

## V. CONCLUSION

Lighthouse and BNSF's preemption claims should be dismissed as a matter of law. The federal laws they rely on to claim preemption do not apply here because the State decisions do not regulate vessel or rail traffic. Moreover, the State had valid reasons for its denials that have nothing to do with rail or vessel transport. Thus, even if the Court concluded preemption did apply, it could not reverse the State's decisions or redress Plaintiffs' claimed injury. The Court should dismiss Lighthouse's and BNSF's federal preemption claims.

DATED this 16th day of August 2018.

ROBERT W. FERGUSON
Attorney General

*s/ Laura J. Watson*
*s/ Lee Overton*
*s/ Thomas J. Young*
*s/ Sonia A. Wolfman*
LAURA J. WATSON, WSBA #28452
Senior Assistant Attorney General
H. LEE OVERTON, WSBA #38055
Assistant Attorney General
THOMAS J. YOUNG, WSBA #17366
Senior Counsel
SONIA A. WOLFMAN, WSBA #30510
Assistant Attorney General
Office of the Attorney General
Ecology Division
P.O. Box 40117
Olympia, WA 98504-0117
Telephone: 360-586-6770
Email: ECYOLYEF@atg.wa.gov
         LauraW2@atg.wa.gov
         LeeO1@atg.wa.gov

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT ON
PREEMPTION ISSUES  (3:18-cv-
05005-RJB)

17

ATTORNEY GENERAL OF WASHINGTON
Ecology Division
PO Box 40117
Olympia, WA 98504-0117
360-586-6770

TomY@atg.wa.gov
SoniaW@atg.wa.gov

*Attorneys for the Defendants*
*Jay Inslee, in his official capacity as Governor*
*of the State of Washington; and Maia Bellon,*
*in her official capacity as Director of the*
*Washington Department of Ecology*

 *s/ Edward D. Callow*
EDWARD D. CALLOW, WSBA #30484
Assistant Attorney General
Office of the Attorney General
Natural Resources Division
P.O. Box 40100
Olympia, WA 98504-0100
Telephone: 360-664-2854
Email: RESOlyEF@atg.wa.gov
        tedc@atg.wa.gov

*Attorney for Defendant*
*Hilary S. Franz, in her official capacity as*
*Commissioner of Public Lands*

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT ON
PREEMPTION ISSUES  (3:18-cv-
05005-RJB)

18

ATTORNEY GENERAL OF WASHINGTON
Ecology Division
PO Box 40117
Olympia, WA 98504-0117
360-586-6770

**CERTIFICATE OF SERVICE**

I hereby certify that on August 16, 2018, I caused the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

DATED this 16th day of August 2018.

<u>*s/ Laura J. Watson*</u>
LAURA J. WATSON, WSBA #28452
Senior Assistant Attorney General
360-586-6743

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT ON
PREEMPTION ISSUES  (3:18-cv-
05005-RJB)