UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| LIGHTHOUSE RESOURCES INC., et al.,<br><br>Plaintiffs,<br><br>and<br><br>BNSF RAILWAY COMPANY<br><br>Intervenor-Plaintiff,<br><br>v.<br><br>JAY INSLEE, et al.,<br><br>Defendants,<br>and<br><br>WASHINGTON ENVIRONMENTAL COUNCIL, et al.,<br><br>Intervenor-Defendants. | CASE NO. 3:18-cv-05005-RJB<br><br>ORDER ON DEFENDANT HILARY FRANZ'S MOTION FOR SUMMARY JUDGMENT UNDER THE ELEVENTH AMENDMENT |

THIS MATTER comes before the Court on the Defendants Hilary Franz's Motion for Summary Judgment under the Eleventh Amendment. Dkt. 151. The Court has considered the motion, briefs filed in support of and opposition thereto, and the remainder of the file herein.

1       This case arises from the Washington State Department of Ecology's denial of a Clean Water Act ("CWA") Section 401 Certification ("water quality certificate") and the Washington Department of Natural Resources' ("DNR") denial of a request for approval of a sublease of state-owned aquatic lands for Plaintiffs Lighthouse Resources, Inc., Lighthouse Products, LLC, LHR Infrastructure, LLC, LHR Coal LLC, and Millennium Bulk Terminals-Longview, LLC's (collectively "Lighthouse") proposed coal export terminal on and in the Columbia River. Dkt. 1. As is relevant to the pending motion, Lighthouse and Intervenor-Plaintiff BNSF Railway Company maintain that the State's denials violate the Commerce Clause of the U.S. Constitution, are preempted by the Interstate Commerce Commission Termination Act ("ICCTA"), and Lighthouse further argues that the State's decisions are also preempted by the Ports and Waterways Safety Act ("PWSA"). Dkts. 1 and 22-1.

      Defendant Franz, who is the Commissioner of DNR and is sued only in her official capacity, moves for summary judgment, arguing that the Eleventh Amendment bars consideration of the claims asserted against her. Dkt. 151. Lighthouse and BNSF oppose the motion. Dkts. 155 and 154. For the reasons provided below, the Eleventh Amendment bars consideration of the claims asserted against Defendant Franz. Accordingly, Defendant Franz's motion for summary judgment (Dkt. 151) should be granted.

## I.    FACTS AND PENDING MOTION

### A. FACTS

Lighthouse, a coal supply chain company, proposes to build a new coal export facility at the existing Millennium Bulk Terminal in Longview, Washington on and in the Columbia River. At full build out, the proposed terminal would be capable of exporting 44 million metric tons of coal a year, and would include three large docks. BNSF would provide rail transport for the coal to

the terminal. The coal would then be loaded onto ocean going vessels at the proposed terminal's docks in the Columbia River for shipment to Asia.

The proposed terminal's docks would be built on state-owned aquatic lands in the Columbia River. The State, through DNR, currently leases the state-owned aquatic land at issue to Northwest Alloys, Inc. ("NW Alloys"). Dkt. 21-1, at 17. Lighthouse wants to sublease these state-owned aquatic lands. Dkt. 1.

Lighthouse began the permitting process for the proposed terminal in 2012. In addition to a water quality certification and other permits, Lighthouse was required, by the NW Alloys' lease, to get DNR's approval of a sublease for the state-owned aquatic lands upon which the new docks would be constructed. Dkt. 1-2. On January 2, 2017, Peter Goldmark, the then Commissioner of DNR, denied the request. Dkt. 130-2. The decision provided that the denial was based on the failure to provide requested financial information. *Id.* In October 2017, the Cowlitz County Superior Court ruled that the decision was "arbitrary and capricious" (Dkt. 1, at 33) but did not require that the sublease be approved. The Superior Court decision is on appeal to the Washington State Court of Appeals, Division II. Dkt. 21-4.

On September 26, 2017, the State denied Lighthouse's application for a water quality certificate. Dkt. 1-1.

In August of 2017, Northwest Alloys requested that DNR approve improvements to the site in support of the project. Dkt. 1-2. On October 24, 2017, Defendant Franz, as the Commissioner of DNR, denied the request without prejudice. Dkt. 1-2. The October 24, 2017 decision was not appealed administratively or to the Washington State Courts.

**B. PENDING MOTION**

In her motion for summary judgment, Defendant Franz argues that she is immune from suit under the Eleventh Amendment for her management decisions regarding the state-owned aquatic lands at issue here. Dkt. 151. She maintains that the Plaintiff and Intervenor-Plaintiff's requested relief implicates Washington's sovereign interest in controlling its own aquatic lands and so is barred by the Eleventh Amendment under the U.S. Supreme Court case *Idaho v. Coeur d'Alene Tribe,* 521 U.S. 261 (1997). *Id.*

Lighthouse and BNSF both respond and argue that Defendant Franz is not immune from suit under the Eleventh Amendment. Dkts. 155 and 154. They assert that *Coeur d'Alene Tribe's* narrow exception to the *Ex Parte Young,* 209 U.S. 123 (1908) doctrine does not apply here. *Id.* BNSF further asserts that the law of the case doctrine precludes reconsideration of this issue, which it maintains the Court has already decided. Dkt. 154.

In reply, Defendant Franz argues that the Court has not already decided this issue. Dkt. 160. She points out that the motion to dismiss based on sovereign immunity was denied without prejudice and so the law of the case doctrine does not preclude a decision on this question. Dkt. 160. Defendant Franz maintains that the leasehold interest that Lighthouse seeks in state-owned aquatic lands would divest the state of the control, occupancy, and use of its own land and so the claims are barred by the Eleventh Amendment. *Id.*

This opinion will first address whether the case of the law doctrine precludes consideration of the question at issue in this motion. It will then consider whether Defendant Franz is entitled to Eleventh Amendment immunity.

## II. DISCUSSION

### A. LAW OF THE CASE

"The law-of-the-case doctrine generally provides that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Askins v. U.S. Dep't of Homeland Sec.*, 899 F.3d 1035, 1042 (9th Cir. 2018)(*internal citations omitted*). Where an issue in a case has been decided by a higher court, lower courts are precluded from reconsidering the issue. *Id.* A court may also decline to reconsider an issue that has been previously decided and "is binding on the parties – for example, where the district court has previously entered a final decree or judgment." *Id.* "The law of the case doctrine does not, however, bar a court from reconsidering its own orders before judgment is entered or the court is otherwise divested of jurisdiction over the order." *Id.*

The law of the case doctrine does not apply here. The Court may consider whether Defendants Franz is entitled to Eleventh Amendment immunity. The Court denied the motions to dismiss based on Eleventh Amendment immunity without prejudice. Dkt. 117, at 59. No final decree or judgment has been entered. The Court is not otherwise divested of jurisdiction to consider the question. The law of the case doctrine does not bar the undersigned from considering Defendant Franz's motion for summary judgment based on Eleventh Amendment immunity.

### B. STANDARD ON MOTIONS FOR SUMMARY JUDGMENT

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue

of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)(nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). *See also* Fed. R. Civ. P. 56 (d). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors Association*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254, T.W. *Elect. Service Inc.*, 809 F.2d at 630. The court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*). Conclusory, non-specific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990).

### C. ELEVENTH AMENDMENT IMMUNITY

The Eleventh Amendment provides: "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." "The Eleventh Amendment has been authoritatively construed to deprive federal courts of

jurisdiction over suits by private parties against unconsenting States." *Seven Up Pete Venture v. Schweitzer,* 523 F.3d 948, 953 (9th Cir. 2008).

There is no dispute that the State of Washington (via Defendant Franz - who is sued in her official capacity) has not consented to a suit related to the decisions regarding the sub-lease and proposed improvements to the aquatic lands at issue in this case. Lighthouse and BNSF's claims are barred by the Eleventh Amendment, unless an exception applies.

Lighthouse and BNSF contend that the exception announced in *Ex parte Young* applies. Dkts. 154 and 155. The *Ex parte Young* exception to the Eleventh Amendment generally allows federal courts to "order prospective relief . . . as well as measures ancillary to appropriate prospective relief" against a state (or officers sued in their official capacities), *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004)(*internal quotation marks and citations omitted*), "insofar as they s[eek] to preclude continuing violations of federal law," *Idaho v. Coeur d'Alene Tribe of Idaho,* 521 U.S. 261 (1997). The *Ex parte Young* exception does not allow federal courts to "award retrospective relief, for instance, money damages or its equivalent, if the State invokes its immunity." *Frew,* at 437.

The State argues that an exception to the *Ex parte Young* exception applies – that of the one announced in *Coeur d'Alene Tribe*. In *Coeur d'Alene Tribe,* the U.S. Supreme Court considered whether a federal court was barred by the Eleventh Amendment from hearing a Tribe's claims asserted against the state of Idaho for an interest in submerged aquatic lands which were within the original boundaries of the Coeur d'Alene Reservation as defined by federal law. The Tribe sought "a declaratory judgment to establish its entitlement to the exclusive use and occupancy and the right to quiet enjoyment of the submerged lands as well as a declaration of the invalidity of all Idaho statutes, ordinances, regulations, customs, or usages

which purport to regulate, authorize uses or affect in any way the submerged lands." *Id.* at 265. The Tribe also sought a preliminary and permanent injunction "prohibiting defendants from regulating, permitting, or taking any action in violation of the Tribe's rights of exclusive use and occupancy, quiet enjoyment, and other ownership interest in the submerged lands." *Id.* The Court found that the relief sought by the Tribe was "close to the functional equivalent of [a] quiet title [action] in that substantially all benefits of ownership and control would shift from the State to the Tribe." *Id.*, at 282. The Court noted that the "lands underlying navigable waters have historically been considered sovereign lands. State ownership in them has been considered an essential attribute of sovereignty." *Id.*, at 283. In holding that the Eleventh Amendment barred the Tribe's suit against Idaho, it noted that "navigable waters uniquely implicate sovereign interest." *Id.*, at 284.

"*Coeur d'Alene* provides only a unique and narrow exception to *Young*, and does not bar all claims that affect state powers, or even important state sovereignty interests." *Lacano Investments, LLC v. Balash*, 765 F.3d 1068, 1074 (9th Cir. 2014)(*internal citations omitted*). "[W]hen an action implicates the exact issues of *Coeur d'Alene* itself, namely navigability of waters or the state's control over submerged lands, federal courts lack jurisdiction to hear the case." *Id.* In order to determine if the Coeur d'Alene exception applies, courts in the Ninth Circuit apply the "functional approach" and compare the relief sought by plaintiffs to a quiet title action. *Id.*

In applying the "functional approach," a review of the relief that Lighthouse and BNSF seek is necessary. In addition to costs and attorneys' fees, Lighthouse seeks the following relief:

> A. A declaration that Defendants' denial of MBT Longview's requested sublease for the Millennium Bulk Terminal was an unconstitutional violation of the dormant commerce clause.

ORDER ON DEFENDANT HILARY FRANZ'S MOTION FOR SUMMARY JUDGMENT UNDER THE ELEVENTH AMENDMENT - 8

B. A declaration that Defendants' denial of MBT Longview's requested CWA section 401 certification was an unconstitutional violation of the dormant commerce clause. . .

C. A declaration that Defendants' denial of MBT Longview's requested CWA section 401 certification was preempted by ICCTA and the PWSA.

D. A declaration that any environmental reviews of the proposed coal export facility at the Millennium Bulk Terminal - or any future coal export terminal that Lighthouse or its subsidiaries propose - may not be used to deny or unreasonably condition a permit beyond the standards applied to other non-coal terminal projects, including denying or unreasonably conditioning a permit based on the effects of transporting coal to and from the Terminal by rail and vessel traffic in interstate or foreign commerce.

E. A declaration that potential environmental effects within the jurisdiction of the federal government cannot be the basis of a conclusion that the environmental effects of the Millennium Bulk Terminal - or any future coal export terminal that Lighthouse or its subsidiaries propose - project are unmitigable.

F. A declaration that any decision by any state or local entity relying on the Defendants' denial of the sublease or the Defendants' denial of the CWA section 401 certification, including the denial of MBT Longview's requested shoreline permit, is an unconstitutional violation of the dormant commerce clause and/or is preempted by ICCTA and the PWSA.

G. An order vacating any and all of the Defendants' unconstitutional and illegal decisions regarding the Millennium Bulk Terminal, as well as any federal, state, or local decisions relying on Defendants' unconstitutional or illegal actions.

H. An injunction ordering the Defendants to apply the same review standards to the Millennium Bulk Terminal - or any future coal export terminal that Lighthouse or its subsidiaries propose - that are applied to other non-coal terminal proposals.

I. An injunction ordering the Defendants not to deny MBT Longview's requested CWA section 401 certification or any other permit or approval for the Millennium Bulk Terminal on the basis of rail or vessel traffic, or any other potential environmental effects within the jurisdiction of the United States.

J. An injunction ordering the Defendants to continue processing any and all current and future MBT Longview permit applications.

Dkt. 1, at 51-52. Similarly, in addition to attorneys' fees and costs, BNSF seeks the following relief:

> A declaration that ICCTA preempts any decision by any state or local entity relying on the Defendants' denial of the sublease or the Defendants' denial of the CWA section 401 certification, including the denial of MBT Longview's requested shoreline permit, when such denials are based on the purported rail-related impacts of a proposed project.
>
> A declaration that Defendants' denial of MBT Longview's requested sublease for the Millennium Bulk Terminal violates the dormant commerce clause.
>
> A declaration that Defendants' denial of MBT Longview's requested CWA section 401 certification violates the dormant commerce clause.
>
> A declaration that any environmental reviews of the proposed coal export facility at the Millennium Bulk Terminal - or any future coal export terminal that Plaintiffs or BNSF may propose - may not be used to deny or unreasonably condition a permit beyond the standards applied to other non-coal terminal projects, including denying or unreasonably conditioning a permit based on the effects of transporting coal to and from the Terminal by rail traffic in interstate or foreign commerce.
>
> A declaration that potential environmental effects within the jurisdiction of the federal government cannot be the basis of a conclusion that the Project's environmental effects - or any future coal export terminal that Plaintiffs or BNSF propose - are not mitigatable.
>
> An order vacating any and all of the Defendants' unconstitutional and illegal decisions regarding the Project, as well as any federal, state, or local decisions relying on Defendants' unconstitutional or illegal actions.
>
> An injunction ordering the Defendants to apply the same review standards to the Project - or any future coal export terminal that Plaintiffs or BNSF propose—that are applied to other non-coal terminal proposals.
>
> An injunction ordering the Defendants not to deny MBT Longview's requested CWA section 401 certification or any other permit or approval for the Terminal on the basis of rail traffic, or any other potential environmental effects within the jurisdiction of the United States.
>
> An injunction ordering the Defendants to continue processing any and all current and future MBT Longview permit applications.

Dkt. 22-1, at 24-25.

Defendant Franz's Motion for Summary Judgment under the Eleventh Amendment (Dkt. 151) should be granted. The relief Lighthouse and BNSF seek directly implicate Washington's

core sovereign interests – control of its aquatic lands. Under RCW § 79.105.060 (20), "[s]tate owned aquatic lands" are "all tide lands, shorelands, harbor areas, the beds of navigable waterways owned by the state." By eliminating a large majority of the grounds upon which a decision about a sub-lease or improvement applications in the future may be made, Lighthouse and BNSF's requested relief functionally hamstrings Washington's authority to determine the use and control of its own aquatic lands. The relief, if granted, is "close to the functional equivalent of [a] quiet title [action] in that substantially all benefits of ownership and control would shift" from Washington to a private company for the life of the sub-lease. *Coeur d'Alene,* at 282. It would force the state to accept structures on its' own land. It would functionally prevent Washington State's officers from exercising their authority over Washington's sovereign lands. The gravamen of the Complaints and requested relief here (related to the State's decision to deny the subleases and deny, without prejudice, the request for improvements on state owned aquatic lands) is to divest the state of "sovereignty over territory within its boundaries." *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 649 (2002)(*Kennedy concurring*). The sweeping relief sought by Lighthouse and BNSF implicate the exact issues of *Coeur d'Alene* itself - the state's control over its own submerged lands. *Lacano,* at 1074. Accordingly, this Court lacks jurisdiction to hear the claims asserted against Defendant Franz under the Eleventh Amendment to the U.S. Constitution. *Id.*

This ruling does not mean that Washington may not be held accountable for the decisions at issue in this motion. There is an available state forum for Lighthouse and BNSF to challenge the decisions at issue here. At this stage, they have been successful – the Cowlitz County Superior Court ruled the decision to deny the sublease was "arbitrary and capricious."

ORDER ON DEFENDANT HILARY FRANZ'S MOTION FOR SUMMARY JUDGMENT UNDER THE ELEVENTH AMENDMENT - 11

1     Lighthouse and BNSF maintain that this suit against Defendant Franz may go forward under *Ex parte Young* as applied in *Verizon Md. Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. 635 (2002). Dkts. 154 and 155.

    In *Verizon*, the Supreme Court held that "[i]n determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" 535 U.S. at 645 (*quoting Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296 (1997) (O'Connor, J., joined by Scalia and Thomas, JJ., concurring in part and concurring in judgment)). Their reliance on *Verizon* is misplaced. The Court in *Verizon* was not addressing a State's decisions related to the state-owned aquatic lands, which the Court has held "implicates special sovereignty interest." *Coeur d'Alene Tribe,* at 281. Moreover, the question of which test applies was squarely addressed in *Lacano* and the Ninth Circuit held that the "functional approach" test (the one used above) applies. *Lacano,* at 1074.

    Lighthouse and BNSF point to other cases and argue that other courts in other circuits have not applied *Coeur d'Alene Tribe*. Dkts. 154 and 155. None of the cases cited involve a state's denial of a lease or sub-lease, or control of state-owned aquatic lands. For example, they point to *Islander East Pipeline Co., LLC v. Connecticut Department of Environmental Protection,* 482 F.3d 79 (2nd Cir. 2006). In that case, the Second Circuit considered whether Connecticut voluntarily waived its Eleventh Amendment sovereign immunity by participating in its optional "federally deputized role" as a regulator under the federal Natural Gas Act (NGA) and Clean Water Act. Section 19(d) of the NGA, provides "an expedited direct cause of action in the federal appellate courts to challenge a state administrative agency's order, action, or failure

to act with respect to a permit application required under federal law in order to proceed with a natural gas facility project." *Islander E. Pipeline*, at 83–84. In concluding that the state had voluntarily waived its immunity from suit, the Second Circuit noted that "by going forward with its federally deputized role . . . , Connecticut has now knowingly waived its immunity from [the NGA's] Section 19(d) suit in order to receive the benefits of participating in the NGA and CWA regulatory scheme." *Islander E. Pipeline*, at 91.

*Islander E. Pipeline* does not apply here. There is no showing that the Washington waived its Eleventh Amendment rights.

### D. CONCLUSION

The law of case doctrine does not prevent this Court from determining whether the State of Washington by way of Defendant Franz (as a state officer sued in her official capacity) is entitled to Eleventh Amendment immunity. This Court does not have jurisdiction to consider the claims asserted against Defendant Franz under the Eleventh Amendment. All claims and requested relief sought against her are predicated on decisions which implicate Washington's uniquely sovereign interest in its own submerged land. The relief sought, if granted, would divest Washington State of control over its sovereign lands. The result, then, is the "functional equivalent of a quiet title" action. Review of the Washington's decisions related to the sub-lease and application for improvements to the property, by this Court, is barred by *Coeur d'Alene Tribe*. Defendant Franz's motion for summary judgment (Dkt. 151) should be granted.

### III. ORDER

Therefore, it is hereby **ORDERED** that:

- Defendant Hilary Franz's Motion for Summary Judgment under the Eleventh Amendment (Dkt. 151) **IS GRANTED**; and

- The claims asserted against Defendant Hilary Franz **ARE DISMISSED**.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

Dated this 23rd day of October, 2018.

*Robert J. Bryan* (signature)

ROBERT J. BRYAN
United States District Judge