THE HONORABLE ROBERT J. BRYAN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| LIGHTHOUSE RESOURCES INC., et al, | NO.  3:18-cv-05005-RJB |
| Plaintiffs, | **PLAINTIFFS' AND PLAINTIFF-INTERVENOR'S DAUBERT MOTION TO EXCLUDE DEFENDANTS' EXPERT DAVID BATKER** |
| and | |
| BNSF RAILWAY COMPANY, | |
| Plaintiff-Intervenor, | **NOTE ON MOTION CALENDAR: FRIDAY, MARCH 1ST, 2019** |
| v. | |
| JAY INSLEE, et al., | **ORAL ARGUMENT REQUESTED** |
| Defendants, | |
| WASHINGTON ENVIRONMENTAL COUNCIL, et al., | |
| Defendant-Intervenors. | |

Plaintiffs Lighthouse Resources, Inc. and its subsidiaries (collectively, "Lighthouse") and Plaintiff-Intervenor BNSF Railway Company ("BNSF") move the Court for an order excluding irrelevant and unreliable opinions offered by Defendants' purported expert witness David Batker ("Batker"). As the Court is aware, on September 26, 2017, Defendant Washington Department of Ecology ("Ecology") denied with prejudice Lighthouse's application for a water quality certification under Section 401 of the Clean Water Act. In its September 26, 2017,

PLAINTIFFS' AND PLAINTIFF-INTERVENOR'S
DAUBERT MOTION TO EXCLUDE DEFENDANTS'
EXPERT DAVID BATKER – 1 OF 14
(3:18-cv-05005-RJB)

LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
TACOMA, WASHINGTON 98402
(253) 620-6500 - FACSIMILE (253) 620-6565

decision ("401 Denial"), Ecology articulated the bases purportedly justifying its decision. Now, in a radical departure from those stated bases, Batker has manufactured brand-new, post hoc opinions that ascribe billions of dollars of "benefits" to Defendants' 401 Denial based upon reasons that Ecology never considered, and, in some cases, specifically rejected. Batker's opinions therefore are irrelevant, do not "fit" under *Daubert* and its progeny, and are not helpful to the trier of fact, who must balance the benefits and burdens of Defendants' 401 Denial. Further, even if the Court were inclined to allow Batker to fabricate new justifications for the Defendants' actions, which it should not, the opinions are also unreliable because they are based on a flawed methodology in which either Batker relies on data gathered from Cowlitz County that are then extrapolated across the State of Washington, or in some cases makes conclusions despite admitting that he lacks adequate data in support of his opinions. Accordingly, in all events, the Court should exclude Batker's opinions under Rule 702.

## I.   <u>BACKGROUND</u>

Since 2011, Lighthouse has sought to construct a new coal export facility at the existing Millennium Bulk Terminal in Longview, Washington. For nearly six years, Ecology and Cowlitz County worked to prepare an Environmental Impact Statement ("EIS"), the final version of which was released on April 28, 2017 (the "FEIS"). For nine resource areas, the FEIS identified "potential" impacts that "could" occur. But the FEIS ultimately concluded that nearly all of those impacts could be mitigated or eliminated by expected, planned, or likely infrastructure improvements or mitigation efforts. *See* FEIS at S-46-60.

On September 26, 2017, Ecology officially denied Lighthouse's application for a Section 401 certification with prejudice. Contrary to the actual findings of the FEIS, Ecology declared in its 401 Denial that the FEIS found that the project "would" have "unavoidable and significant adverse impacts" to nine areas. *See Section 401 Water Quality Certification Denial*

PLAINTIFFS' AND PLAINTIFF-INTERVENOR'S
DAUBERT MOTION TO EXCLUDE DEFENDANTS'
EXPERT DAVID BATKER – 2 OF 14
(3:18-cv-05005-RJB)

LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
TACOMA, WASHINGTON 98402
(253) 620-6500 - FACSIMILE (253) 620-6565

1
2
3
4
5

*(Order No. 15417)*, STATE OF WASHINGTON DEP'T OF ECOLOGY, Sept. 26, 2017, at 3 (describing FEIS). Ecology contends that the 401 Decision follows the FEIS; Lighthouse disagrees. *See* Dkt. #1-1 at 4; *see also* Exhibit A to Jones Declaration at 2-3, Rog. No. 3 Answer; Exhibit B to Jones Declaration at 3–4, Bellon Dep. 41:25–42:12.

6
7
8
9
10
11
12
13
14
15
16
17
18

More than a year later, Defendants provided Batker's opinions, which purport to "provide[] a partial economic assessment of some of the significant and unavoidable adverse impacts identified in the FEIS . . . ." Exhibit D to Jones Declaration at 13, DAVID BATKER, EXPERT REPORT: ECONOMIC COSTS WITHIN WASHINGTON STATE OF THE PROPOSED MILLENNIUM BULK TERMINAL IN LONGVIEW, WASHINGTON 1 (2018) ("Batker Report"). But it is undisputable that Batker's opinions depart wildly from both the FEIS and Ecology's stated bases for the 401 Denial. Batker in fact admits he dramatically departed from the Defendants' stated reasons for denying the permit. *See* Exhibit C to Jones Declaration at 3–4,10–11, Batker Dep. 13:22–14:6, 77:7–78:7 (Q: "Did [counsel] tell you you were limited in your analysis to only those matters identified as the basis for Ecology's decision in its 401 denial?" A: "No." Q: "Did they tell you you were free to identify any other impacts that you felt were appropriate and that you could monetize?" A: "Yes. I asked that question and they said yes, feel free to.").[1]

19
20
21
22
23

As a result, Batker's cited benefits of the 401 Denial go far beyond the bases for the Denial. *See, e.g.,* Exhibit C to Jones Declaration at 12–14, Batker Dep. 81:22–83:11 (Q: "[Property values and the social cost of carbon damage] make up approximately half of the total financial impacts identified in your report, correct?" A: "Correct." Q: "And those two factors were not mentioned in Ecology's 401 decision, correct?" A: "Yes.") (objection omitted).[2]

24
25
26

---

[1] *See also* Exhibit C to Jones Declaration at 4–7, Batker Dep. 14:23–17:11 (Q: "What role did the attorneys for the state play in the review and editing?" A: "They did read over the report." . . . Q: "How extensive were the comments and suggested edits by the state's attorneys?" A: "I felt they were not extensive. Very little.").

[2] *See also* Exhibit C to Jones Declaration at 9, Batker Dep. 72:12–72:19 (Q: "I'm not asking about economic effects. I'm asking if greenhouse gas emissions, loss of ecosystem services, or property values were cited by

LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
TACOMA, WASHINGTON 98402
(253) 620-6500 - FACSIMILE (253) 620-6565

Likewise, Defendants admit that Batker's benefits are not the bases for the State's decision. *See* Exhibit B to Jones Declaration at 3–4, Bellon Dep. 41:25–42:12 (Q: "So other impacts, such as greenhouse gases, wetlands impacts, water quality impacts, or fish impacts, if they were not listed here in [the 401 Denial] as unavoidable, significant adverse, and unmitigable, they were not a reason for the 401 denial, correct?" A: "We chose not to include those in here because they had the ability to be avoided or to be mitigated." Q: "Right. And the Department of Ecology isn't relying on those impacts as a basis for its--" A: "Denial." Q: "--denial, correct? Thank you." A: "Yes."); *see also* Exhibit C to Jones Declaration at 10–14, Batker Dep. 77:7–78:7, 81:22-83:11. Moreover, Batker's opinions are in all events unreliable because they derive from insufficient data and a flawed methodology, in which data from a single county (oftentimes Cowlitz County) is frequently extrapolated across all counties in the state. Accordingly, Batker's opinions should be excluded.

## II.    <u>LEGAL STANDARD</u>

Federal Rule of Evidence 702 allows "[a] witness who is qualified as an expert" to "testify in the form of an opinion" if that testimony is both relevant and reliable. Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 590–91 (1993) ("*Daubert I*"). Under *Daubert*, the court engages in a two-pronged analysis to ensure that the "testimony or evidence admitted is not only relevant, but reliable." *Daubert I*, 509 U.S. at 589.

To be relevant, the opinions must "fit"—that is, must be "sufficiently tied to the facts of the case that it will aid the [factfinder] in resolving a factual dispute." *Id.* at 591 (internal quotation omitted). The "fit" standard is higher than bare relevance in that testimony must "logically advance[] a material aspect of the proposing party's case." *Daubert II*, 43 F.3d at

---

Ecology as justification in any way for its decision to deny Millennium's 401 water quality certification? A: "To my knowledge, no. Those were not reasons to deny the certification . . . .").

PLAINTIFFS' AND PLAINTIFF-INTERVENOR'S
DAUBERT MOTION TO EXCLUDE DEFENDANTS'
EXPERT DAVID BATKER – 4 OF 14
(3:18-cv-05005-RJB)

LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
TACOMA, WASHINGTON 98402
(253) 620-6500 - FACSIMILE (253) 620-6565

1315. *See also id.* at 1321 n.17 (explaining that Rule 702's "relevance" requirement is not "merely a reiteration of the general relevancy requirement of Rule 402"). Ultimately, expert opinions that do not "relate to any issue in the case [are] not relevant and, ergo, non-helpful." *Daubert I*, 509 U.S. at 591.

To be reliable, expert opinions must be grounded in verifiable methods and procedures and must be "more than subjective belief or unsupported speculation." *Id.* at 590. The ultimate test is "not the correctness of the expert's conclusions but the soundness of his methodology." *Daubert II*, 43 F.3d at 1318. A court thus may exclude opinions that the court determines are flawed because "there is simply too great an analytical gap between the data and the opinion proffered." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

## III.   ARGUMENT

### A.   Batker's Testimony Is Irrelevant Because He Opines on Matters Outside the Scope of the Complaint

Lighthouse's and  BNSF's dormant Commerce Clause claims relate to, among other things, Defendants' decision to deny a Section 401 water quality certification for the Terminal. The 401 Denial identified "unavoidable and significant adverse impacts" purportedly derived from the FEIS, and concluded that in light of those impacts the Section 401 certification for the Terminal should be denied with prejudice. Dkt. #1-1 at 3-13.[3] Over and over, Defendants base their decision on those reasons contained in the 401 Denial. Nothing more.

In his report and deposition testimony, however, Batker devotes three full chapters in his report, and half his perceived benefit, to impacts not even ***mentioned*** in Defendants' 401

---

[3] In this case, Defendants have continued to claim that their 401 Denial grew out of the environmental review process and the FEIS's findings. *See* Exhibit A to Jones Declaration at 2-3, Rog. No. 3 Answer; Exhibit B to Jones Declaration at 3–4, Bellon Dep. 41:25–42:12; Exhibit C to Jones Declaration at 9, 12–13, Batker Dep. 72:12–72:19, 81:22–82:3.

PLAINTIFFS' AND PLAINTIFF-INTERVENOR'S
DAUBERT MOTION TO EXCLUDE DEFENDANTS'
EXPERT DAVID BATKER – 5 OF 14
(3:18-cv-05005-RJB)

LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
TACOMA, WASHINGTON 98402
(253) 620-6500 - FACSIMILE (253) 620-6565

Denial—"ecosystem services," greenhouse gas emissions,[4] and property values. Exhibit D to Jones Declaration at 66–134, 159–74, Batker Report chs. 2, 3, 5. In fact, these impacts are not mentioned by the Defendants <u>ever</u>, until November 14, 2018: the expert disclosure deadline, more than a year after the 401 Denial. And even after November 14, Batker and the Defendants admit that these impacts are irrelevant to the Defendants' decision. These alleged impacts – including social cost of carbon damage calculations (which he uses to calculate damages due to greenhouse gas emissions) and lost property values – comprise approximately half of the total financial impacts identified in his report. *See* Exhibit C to Jones Declaration at 12–13, Batker Dep. 81:22–82:3.[5]

Also, Batker goes beyond the FEIS's and the 401 Denial's use of a 20-year analysis period. *See, e.g.*, Exhibit E to Jones Declaration at 5, 22, 24, FEIS at S-40 n.8, 2-29 n.21, 4.6-25; Exhibit D to Jones Declaration at 36, Batker Report at 24 (discussing the FEIS); Dkt. #1-1 at 4. Batker unjustifiably uses cost estimates after **50 years** throughout his report, thereby producing much larger harm estimates. *See, e.g.*, Exhibit D to Jones Declaration at 14, 15, 16, 18, 19, 20, 22, 25, 26, 36, 53, Batker Report at 2, 3, 4, 6, 7, 8, 10, 13, 14, 24, 41. And he reaches this contradictory conclusion, despite admitting that he "speculatively" questions the Terminal's long term viability. *See* Exhibit C to Jones Declaration at 17 Batker Dep. 124:21–24 (Q: "And when you reference viability here, you're talking about economic viability, correct?" A "Yes. And I admit that that from my perspective was a speculative statement.").

---

[4] Although the FEIS does contain a section regarding greenhouse gas emissions, it found that "[i]mplementation of the proposed mitigation measures . . . would reduce impacts from greenhouse gas emissions and there would be no unavoidable and significant adverse environmental impacts from greenhouse gas emissions." Exhibit E to Jones Declaration at 28, FEIS Section 5.8-24.

[5] Batker acknowledges that Ecology did not cite loss of ecosystem services, greenhouse gas emissions, or property values as reasons to deny the Section 401 certification. *See* Exhibit C to Jones Declaration at 9, 13-14, Batker Dep. 72:12–19, 82:4–83:11.

PLAINTIFFS' AND PLAINTIFF-INTERVENOR'S
DAUBERT MOTION TO EXCLUDE DEFENDANTS'
EXPERT DAVID BATKER – 6 OF 14
(3:18-cv-05005-RJB)

In addition, the FEIS's and 401 Denial's review of air quality, vehicle transportation, noise and vibration, and social and community resources were limited to impacts within Cowlitz County, where the Terminal would be located. Dkt. #1-1 at 4-9; Exhibit E to Jones Declaration at 27, 25, 26, 23, FEIS at 5.6-4, 5.3-2, 5.5-2, 3.2-2. Batker's opinion, on the other hand, includes his projection of impacts in those categories for the entire State of Washington, multiplying the stated "benefits" of the 401 Denial. Exhibit D to Jones Declaration at 41, 181–83, 220, 238, Batker Report at 29, 169-171, 208, 226.

The relevance of Batker's testimony turns on Defendants' ability to rely on harms that they did not identify in their 401 Denial. It is true that courts have sometimes been more generous in interpreting the conflicting or unstated purposes of the legislative bodies whose laws are alleged to transgress the dormant Commerce Clause. In this case, however, the state action at issue is the product of an extensive EIS process that was specifically intended to consider all the potential harms. The Defendants have reiterated that the FEIS provides the basis for their Denial.  Dkt #1-1 at 2-14. Defendants cannot now, a year and a half later, graft new justifications onto their decision simply because they worry that their original reasoning cannot withstand Commerce Clause scrutiny. *See Kassel v. Consol. Freightways Corp. of Delaware*, 450 U.S. 662, 682 n.3 (1981) (Brennan, J., concurring) ("[W]here the lawmakers' purposes in enacting a statute are explicitly set forth, or are clearly discernible from the legislative history, this Court should not take . . . the extraordinary step of disregarding the actual purpose in favor of some imaginary basis or purpose.") (internal citations and quotation marks omitted); *see also Hughes v. Oklahoma*, 441 U.S. 338 n. 20 (1979) ("post hoc rationalizations" arising in litigation "for the first time" are irrelevant to the commerce clause inquiry).

Under *Daubert II*, an expert opinion must relate to the claims at issue in the case and must "logically advance[] a material aspect of the proposing party's case." 43 F.3d at 1315;

LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
TACOMA, WASHINGTON 98402
(253) 620-6500 - FACSIMILE (253) 620-6565

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

*Stilwell v. Smith & Nephew, Inc.*, 482 F.3d 1187, 1192 (9th Cir. 2007) (court must "determine whether there is a link between the expert's testimony and the matter to be proved") (internal citations omitted). Here, Batker's testimony ranges far beyond the explicit grounds for Defendants' 401 Denial, both by adding entirely new categories of harm not mentioned in that decision—ecosystem services, greenhouse gases, and property values—and by expanding the geographic scope of analysis beyond what Defendants and the FEIS considered. Because Batker's opinion on these points essentially re-writes the Defendants' 401 Denial, it "is not relevant and, ergo, non-helpful." *Daubert I*, 509 U.S. at 591. In short, all of Batker's opinions that go beyond the 401 Denial should be excluded.

**B.      Batker's Testimony Is Unreliable Because He Improperly Draws Conclusions from Insufficient Data**

Even if Batker's opinions were relevant, which they are not, they nevertheless should be excluded as unreliable. Batker's approach to mitigation is significantly contradictory and contrary to the FEIS.

As an initial matter, Batker willfully commits a massive mitigation error that undermines each of his conclusions. In his deposition, Batker claims he "accepted the FEIS position on mitigation, and [] did not include mitigation in his analysis." Exhibit C to Jones Declaration at 8, Batker Dep 33:13–16. However, the FEIS unambiguously considers—and requires—mitigation measures. *See, e.g.*, Exhibit E to Jones Declaration at 2, 3, 4, 6, FEIS at FS-4, S-10, S-11, S-41. When confronted with this fact, Batker admitted that he did <u>not</u>, in fact, accept the FEIS's position on mitigation, instead ignoring it in order to generate higher harm figures. Exhibit C to Jones Declaration at 15, Batker Dep 95:17–23 (Q: "So even for areas where mitigation was proposed [in the FEIS], you elected not to consider those, correct?" A: "Correct."). For example, Batker acknowledges he failed to consider sound barriers along state

LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
TACOMA, WASHINGTON 98402
(253) 620-6500 - FACSIMILE (253) 620-6565

rail lines, even if they presently exist. Exhibit C to Jones Declaration at 16, Batker Dep 117:2–5. Had Batker properly considered mitigation measures, including those already in existence across the state, his figures would be reduced or even zeroed out.

Second, Batker repeatedly attempts to calculate alleged statewide benefits for the 401 Denial despite a lack of adequate data—often by simply assuming that statewide conditions mirror those in Cowlitz County. For instance, Batker "*assumes* that noise impacts at [railroad] crossings in Washington State . . . have comparable noise levels and subsequent impacts to nearby residences as those crossings modeled in Cowlitz County." Exhibit D to Jones Declaration at 137, Batker Report at 125 (emphasis added). Batker "*assumes* that all other parcels in proximity to rail crossings in Washington State are subject to equal or lesser sound pressure levels" as are households in Cowlitz County. *Id.* at 142, Batker Report at 130 (emphasis added). Batker also "*assumes* that the marginal cost for decibel increases will be similar to those impacts realized in Cowlitz County." *Id.* at 145, Batker Report at 133 (emphasis added). Batker offers no support for these assumptions.

Batker's assessment of alleged air quality impacts caused by project-related locomotive engines is similarly flawed. He focuses on "[t]he area adjacent to BNSF main rail lines across Washington." *Id.* at 40–41, Batker Report at 28–29. Yet Batker acknowledges that, in analyzing air quality impacts for this area, he depends on conclusions suggested by air modeling done for Cowlitz County (and no other county) and extrapolates those results to 15 other counties across the state. Exhibit C to Jones Declaration at 20, Batker Dep. 161:3–6. Similarly, when at one point Batker points to "background" air quality measurements for the area contiguous to the railroad, Batker admits that the background value derives from Spokane County, which Batker then applied to 14 other counties. *Id.*, Batker Dep. 161:10–25; Exhibit D to Jones Declaration

PLAINTIFFS' AND PLAINTIFF-INTERVENOR'S
DAUBERT MOTION TO EXCLUDE DEFENDANTS'
EXPERT DAVID BATKER – 9 OF 14
(3:18-cv-05005-RJB)

LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
TACOMA, WASHINGTON 98402
(253) 620-6500 - FACSIMILE (253) 620-6565

at 62, Batker Report at 50. *See also* Exhibit C to Jones Declaration at 22, Batker Dep. 163:10–12 (admitting that he conducted no air dispersion modeling).

Also similarly, when Batker analyzes alleged air quality and potential health impacts due to diesel particulate matter ("DPM") from the locomotives, Batker extrapolates twice. First, he uses data from Cowlitz County and, once again, extrapolates it statewide. Exhibit C to Jones Declaration at 20, Batker Dep. 161:3–6. Then, he takes data derived from air modeling for a 100-foot zone contiguous to the railroads and extrapolates it for a 150-foot zone around the railroads. *See* Exhibit D to Jones Declaration at 33, Batker Report at 21; Exhibit C to Jones Declaration at 21-22 Batker Dep. 162:17–163:9. Batker does all this oblivious to the different manners in which DPM travels given Washington's considerable environmental diversity.

In many other instances, Batker's opinions lack sufficient supporting data altogether. Batker's analysis of the alleged costs of the delays automobiles may face while waiting for trains to pass at train crossings employs a category he calls "Additional WA State Crossings with Estimated ADT [average daily traffic]." But Batker lacks sufficient data supporting that category. *See* Exhibit D to Jones Declaration at 186, Batker Report at 174 (acknowledging that the category "could be improved with additional information on crossing type and other characteristics").

Batker's calculations of damages due to greenhouse gas emissions should also be excluded because, as Batker acknowledges, there is no reliable way to tie any particular greenhouse gas emissions to specific impact in Washington or anywhere else in the world. *See* Exhibit C to Jones Declaration at 18–19, Batker Dep. 140:1–22, 142:21–23. In a dormant Commerce Clause case, the appropriate test is whether the stated ***local*** benefits—that is, benefits to the state that made the decision—outweigh burdens upon interstate commerce. *See, e.g.*, *Pike v. Bruce Church*, 397 U.S. 137, 142 (1970) (stating that "the extent of the burden [on

PLAINTIFFS' AND PLAINTIFF-INTERVENOR'S
DAUBERT MOTION TO EXCLUDE DEFENDANTS'
EXPERT DAVID BATKER – 10 OF 14
(3:18-cv-05005-RJB)

LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
TACOMA, WASHINGTON 98402
(253) 620-6500 - FACSIMILE (253) 620-6565

interstate commerce] that will be tolerated will of course depend on the nature of the *local* interest involved, and on whether it could be promoted as well with a lesser impact on interstate activities").[6]

Furthermore, in estimating the increase in costs due to train-related accidents and fatalities, Batker departs from the FEIS and relies upon the Federal Railroad Administration ("FRA") datasets for railroad accidents and fatalities. Exhibit C to Jones Declaration at 23–24, Batker Dep. 195:21–196:3. However, the FRA data does not separate passenger trains from freight trains. Exhibit C to Jones Declaration at 24, Batker Dep. 196:12–13. Batker acknowledges that he made no effort to distinguish between passenger rail accidents and freight rail accidents, and that his fatality estimates also include passenger train accidents. Exhibit C to Jones Declaration at 25, Batker Dep. 198:5–11. As a result, his fatality estimates are overstated. The project-related trains would be exclusively freight trains, but passenger trains have higher fatality rates. Batker again deviates from the FEIS with respect to the timeframe for which he calculates costs.

In sum, Batker's opinions repeatedly rely upon improper the validity of which is frequently based upon nothing more than Batker's *ipse dixit*. *Joiner*, 522 U.S. at 146 ("nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert").

## IV.    CONCLUSION

For the foregoing reasons, the Court should exclude Batker's opinions.  By both his and his clients' own admissions—dramatically depart from the actual bases of Defendants' 401 Denial. This case is about the *Defendants'* stated local benefits, not Batker's. Therefore, the

---

[6] For similar reasons, in addition to those discussed above, Batker's greenhouse gas emissions opinion should also be excluded as irrelevant.

PLAINTIFFS' AND PLAINTIFF-INTERVENOR'S
DAUBERT MOTION TO EXCLUDE DEFENDANTS'
EXPERT DAVID BATKER – 11 OF 14
(3:18-cv-05005-RJB)

opinions are irrelevant. Furthermore, even if the court were to rule that the opinions are relevant, which they are not, they derive from a flawed methodology. Accordingly, the opinions should be excluded.

Dated this 13 day of February, 2019.

VENABLE LLP

By: *s/Kathryn K. Floyd*
      Kathryn K. Floyd, DC Bar No. 411027
      (Admitted *pro hac vice*)
      kkfloyd@venable.com

By: *s/Jay C. Johnson*
      Jay C. Johnson, VA Bar No. 47009
      jcjohnson@venable.com
      (Admitted *pro hac vice*)

By: *s/David L. Feinberg*
      David L. Feinberg, DC Bar No. 982635
      DLFeinberg@Venable.com
      (Admitted *pro hac vice*)

      600 Massachusetts Ave NW
      Washington DC 20001
      202-344-4000

By: *s/Kyle W. Robisch*
      Kyle W. Robisch, DC Bar No. 1046856
      KWRobisch@Venable.com
      (Admitted *pro hac vice*)

ORRICK, HERRINGTON & SUTCLIFFE LLP

By: *s/Robert M. McKenna*
      Robert M. McKenna, WSBA No. 18327
      rmckenna@orrick.com

PLAINTIFFS' AND PLAINTIFF-INTERVENOR'S
DAUBERT MOTION TO EXCLUDE DEFENDANTS'
EXPERT DAVID BATKER – 12 OF 14
(3:18-cv-05005-RJB)

LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
TACOMA, WASHINGTON 98402
(253) 620-6500 - FACSIMILE (253) 620-6565

1

2    By: s/Adam N. Tabor
3        Adam N. Tabor, WSBA No. 50912
         atabor@orrick.com
4
         701 Fifth Avenue, Suite 5600
5        Seattle, WA 98104-7097
         206-839-4300
6

7    GORDON THOMAS HONEYWELL, LLP

8    By: s/Bradley B. Jones
9        Bradley B. Jones, WSBA No. 17197
         bjones@gth-law.com
10       1201 Pacific Ave, Ste 2100
         Tacoma, WA 98402
11       (253) 620-6500

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

PLAINTIFFS' AND PLAINTIFF-INTERVENOR'S
DAUBERT MOTION TO EXCLUDE DEFENDANTS'
EXPERT DAVID BATKER – 13 OF 14
(3:18-cv-05005-RJB)

1

CERTIFICATE OF SERVICE

2

3

I hereby certify that on February 13, 2019, I caused the foregoing Plaintiffs' and

4

Plaintiff-Intervenor's Daubert Motion to Exclude Defendants' Expert David Batker,

5

Declaration in Support, and Proposed Order to be electronically filed with the Clerk of the Court

6

using the CM/ECF system which will send notification of the filing to all counsel of record.

7

8

By: _____

9

Savanna Stevens, Legal Assistant

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

PLAINTIFFS' AND PLAINTIFF-INTERVENOR'S
DAUBERT MOTION TO EXCLUDE DEFENDANTS'
EXPERT DAVID BATKER – 14 OF 14
(3:18-cv-05005-RJB)

LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
TACOMA, WASHINGTON 98402
(253) 620-6500 - FACSIMILE (253) 620-6565