THE HONORABLE ROBERT J. BRYAN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| LIGHTHOUSE RESOURCES INC., et al, <br><br> Plaintiffs, <br> and <br><br> BNSF RAILWAY COMPANY, <br><br> Plaintiff-Intervenor, <br> v. <br><br> JAY INSLEE, et al., <br><br> Defendants, <br><br> WASHINGTON ENVIRONMENTAL COUNCIL, et al., <br><br> Defendant-Intervenors. | NO.  3:18-cv-05005-RJB <br><br> **PLAINTIFFS' AND PLAINTIFF-INTERVENOR'S DAUBERT MOTION TO EXCLUDE DEFENDANTS' EXPERT IAN GOODMAN** <br><br> **NOTE ON MOTION CALENDAR: FRIDAY, MARCH 1ST 2019** <br><br> **ORAL ARGUMENT REQUESTED** |

## INTRODUCTION

Defendants retained Mr. Ian Goodman of The Goodman Group as an expert to provide an economic analysis purportedly showing that the Defendants' permitting denials do not significantly burden interstate or foreign commerce.  Defs.' Expert Witness Disclosure at 2, Dkt. #204-1 at p.3; Exhibit A to Jones Declaration, IAN GOODMAN, EXPERT REPORT ON MILLENNIUM BULK TERMINALS-LONGVIEW/LIGHTHOUSE (2018) ("Goodman Report").  Mr.

PLAINTIFFS' AND PLAINTIFF-INTERVENOR'S
DAUBERT MOTION TO EXCLUDE DEFENDANTS'
EXPERT IAN GOODMAN – 1 OF 13
(3:18-cv-05005-RJB)

LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
TACOMA, WASHINGTON 98402
(253) 620-6500 - FACSIMILE (253) 620-6565

Goodman does not possess a degree in economics. He has no knowledge, training, or experience analyzing the domestic and international coal markets that are the primary subjects of his report, and he has never before been hired to conduct such analyses. Indeed, coal markets lie squarely outside Mr. Goodman's professed area of expertise, which he advertises as "pipeline economics and regulation, evolving North American oil, gas and electric markets, economic development and environmental impacts of various energy supply options and transportation logistics, and energy system planning and operations." *Id.* at 5, Goodman Report, Curriculum Vitae at 2. Stated simply, Mr. Goodman is not an economist and knew next to nothing about coal markets before this case. This lack of relevant expertise alone disqualifies Mr. Goodman as an expert.

Even if Mr. Goodman were somehow qualified as an expert in the economics of coal markets, his testimony should be excluded because the methodology he used to reach his opinions is unreliable. His analysis and conclusions are wholly based on a selective review of publicly available sources that Mr. Goodman was unfamiliar with before this case. Further, the primary source on which Mr. Goodman relies to forecast future Asian coal demand explicitly states that it is not a forecast of coal demand. Perhaps as a result, Mr. Goodman has no meaningful opinion about the volume of coal that would be shipped through Lighthouse's proposed coal export terminal, i.e., a foundational issue.

For all of these reasons, Plaintiffs Lighthouse Resources Inc. and its subsidiaries (collectively, "Lighthouse") and Plaintiff-Intervenor BNSF Railway Company ("BNSF") move the Court for an order excluding Mr. Goodman's expert testimony in its entirety.

PLAINTIFFS' AND PLAINTIFF-INTERVENOR'S
DAUBERT MOTION TO EXCLUDE DEFENDANTS'
EXPERT IAN GOODMAN – 2 OF 13
(3:18-cv-05005-RJB)

LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
TACOMA, WASHINGTON 98402
(253) 620-6500 - FACSIMILE (253) 620-6565

**LEGAL STANDARD**

Under Rule 702, a witness may offer testimony in the form of an opinion if that witness is "qualified as an expert" and if the testimony is both reliable and relevant. Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 590-91 (1993). To assess whether a witness may offer opinion testimony, courts first determine whether the witness is qualified. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311, 1315 (9th Cir. 1995) ("*Daubert II*") ("The question of admissibility only arises if it is first established that the individuals whose testimony is being proffered are experts in a particular . . . field."). An expert witness may be qualified "by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. However, a witness is not qualified to offer testimony in the form of an opinion on a matter that is "outside the area of [the witness's] expertise." *See, e.g., Avila v. Willits Environmental Remediation Trust*, 633 F.3d 828, 839 (9th Cir. 2011).

Second, courts must decide whether a proposed expert's opinions are admissible. *Lust v. Merrell Dow Pharmaceuticals., Inc.*, 89 F.3d 594, 597-98 (9th Cir. 1996). Expert testimony is admissible if it is both reliable and relevant. *Daubert*, 509 U.S. at 590-591. *Daubert*'s reliability prong ensures that the expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999). *Daubert*'s relevance prong, on the other hand, ensures that the expert's testimony will "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). The Supreme Court has described the latter inquiry as a question of "fit" between the facts of the case and the expert's testimony. *Daubert*, 509 U.S. at 591.

PLAINTIFFS' AND PLAINTIFF-INTERVENOR'S
DAUBERT MOTION TO EXCLUDE DEFENDANTS'
EXPERT IAN GOODMAN – 3 OF 13
(3:18-cv-05005-RJB)

LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
TACOMA, WASHINGTON 98402
(253) 620-6500 - FACSIMILE (253) 620-6565

# ARGUMENT

**I.     Mr. Goodman Is Unqualified to Serve As an Expert Witness in This Case**

Mr. Goodman's central opinion is that "Washington State's permit denials for the Project do not significantly affect the US coal industry, nor US coal exports to Asian markets." Exhibit A to Jones Declaration at 2, Goodman Report at 1.  Contrary to Rule 702's requirements, though, Mr. Goodman has no "knowledge, skill, experience, training, or education" that qualifies him to offer any expert opinions on any topics concerning the U.S. coal industry, domestic or international coal markets, or international demand for U.S. coal. Fed. R. Evid. 702.

Mr. Goodman is a 1977 graduate of Massachusetts Institute of Technology with a Bachelor's degree in Civil Engineering.  Exhibit A to Jones Declaration at 13, Goodman Report, Curriculum Vitae at 10.  After graduating, Mr. Goodman worked as a consultant conducting research on utilities and utilities regulation.  *Id.* at 12, Goodman Report, Curriculum Vitae at 9. In 1989, Mr. Goodman founded The Goodman Group, and he has worked there ever since.  *Id.*, Goodman Report, Curriculum Vitae at 9.  Mr. Goodman advertises that The Goodman Group's major projects fall into two categories: (1) "Economic Development and Environmental Impacts of Pipelines, Crude by Rail and Crude Oil" and (2) "Economic Development and Environmental Impacts of Other Energy Projects."  Exhibit C to Jones Declaration at 1, The Goodman Group, Projects, http://www.thegoodman.com/projects (last visited Feb. 5, 2019). However, Mr. Goodman has never, in his entire career prior to this case, been hired by a coal company, been hired to lecture on coal issues, given any speeches on coal issues, been hired to analyze or forecast domestic or international coal markets, value coal companies, value coal

PLAINTIFFS' AND PLAINTIFF-INTERVENOR'S
DAUBERT MOTION TO EXCLUDE DEFENDANTS'
EXPERT IAN GOODMAN – 4 OF 13
(3:18-cv-05005-RJB)

LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
TACOMA, WASHINGTON 98402
(253) 620-6500 - FACSIMILE (253) 620-6565

mines, or opine on market-based challenges concerning those markets and market participants. Exhibit B to Jones Declaration at 6-7, Goodman Dep. 21:18-22:19. This case is the first and only time Mr. Goodman has opined on the topics at issue here.

### a. A Witness May Not Offer an Opinion On a Subject That Is Outside The Area of the Witness's Expertise.

The Ninth Circuit has made clear that a witness is not qualified to provide an expert opinion on a subject that is "outside the areas of [that individual's] expertise." *Avila*, 633 F.3d at 839. In *Avila*, while the proffered witness was an expert in "cancer immunology and biology, basic and clinical immunology, and medical toxicology," the Ninth Circuit affirmed the district court's holding that the expert was not qualified to offer an expert opinion on whether chemicals had leaked from a machine shop and harmed the plaintiff. *Id.* Similarly, in *Stewart Title Ins. Co. v. Credit Suisse*, the court found that an attorney with over 30 years of experience in the insurance industry generally, but who admitted that "title insurance [was] 'not part of [his] regular practice,'" was unqualified to provide an expert opinion on "title insurance industry practices and standards." No. 1:11-cv-227, 2015 WL 4250704, at *11 (D. Idaho July 13, 2015). The same court, just last year, applied *Avila* again to exclude an expert who sought to offer an opinion outside the area of his expertise. *Cusack v. BendPak, Inc.*, No. 4:17-cv-00003, 2018 WL 3939318, at *2 (D. Idaho Aug. 15, 2018). In that case, the court reasoned and held that:

> [A]lthough Yanes's field of expertise is *related* to the subject matter of this lawsuit, it is not clear whether this is enough to qualify him as an expert on the technology at issue. The closest experience Yanes has to car lifts is his assertion that he specializes in fork lift, boom lift, and scissor lift accident analysis. Yanes has not explained, however, how being an expert in these areas qualifies him as an expert on the topic of automobile lifts or—more critically—rolling jacks. BendPak's assertions that the mechanism and operations of these various lift systems are similar is not sufficient to meet this burden. The court understands that they are both lift systems, but they utilize different technology and ultimately have different

PLAINTIFFS' AND PLAINTIFF-INTERVENOR'S
DAUBERT MOTION TO EXCLUDE DEFENDANTS'
EXPERT IAN GOODMAN – 5 OF 13
(3:18-cv-05005-RJB)

LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
TACOMA, WASHINGTON  98402
(253) 620-6500  -  FACSIMILE (253) 620-6565

specifications and purposes. Without any evidence of the connection between these two mechanisms, the Court concludes that Yanes's testimony strays from the 'reasonable confines of his subject area.'

*Id.* (quoting *Avila*, 633 F.3d at 839).

Additionally, a witness may not become qualified as an expert simply because he or she conducts a selective review of literature in the relevant field for the purpose of educating his or herself on the relevant topics in order to offer expert testimony. *See, e.g., Wade-Greaux v. Whitehall Laboratories, Inc.*, 874 F. Supp. 1441, 1476-77 (D.V.I. 1994), *aff'd without op.*, 46 F.3d 1120 (3d Cir. 1994) (excluding as unqualified three doctors whose knowledge of teratology (the study of birth defects) consisted only of a review of selected literature for the purpose of providing testimony); *Mancuso v. Consolidated Edison Co. of New York, Inc.*, 967 F. Supp. 1437, 1443 (S.D.N.Y. 1997) ("We cannot help but conclude that Dr. Schwartz was not in fact an expert in PCBs when he was hired by plaintiffs, but that he subsequently attempted, with dubious success, to qualify himself as such by a selective review of the relevant literature.").

      **b. The Opinions Expressed in Mr. Goodman's Report and to Which He Would Testify Are Outside the Area of His Expertise.**

Here, Mr. Goodman seeks to testify to an area outside of his expertise. Mr. Goodman has no knowledge, skill, experience, training, or education that permits him to offer the opinions that the Defendants' permitting denials purportedly do not significantly burden interstate or foreign commerce, or the related opinions that purportedly forecast domestic or international coal markets, evaluate challenges to those markets and their participants, gauge the size and value of those participants, predict the financial successfulness of the coal export terminal at issue, or identify the alternative ports that allegedly can be used as market substitutes for the

PLAINTIFFS' AND PLAINTIFF-INTERVENOR'S
DAUBERT MOTION TO EXCLUDE DEFENDANTS'
EXPERT IAN GOODMAN – 6 OF 13
(3:18-cv-05005-RJB)

LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
TACOMA, WASHINGTON 98402
(253) 620-6500 - FACSIMILE (253) 620-6565

terminal. Nonetheless, Mr. Goodman attempts to offer opinions on each of these topics in his report. Exhibit A to Jones Declaration at 2-3, Goodman Report at 1-2 (summarizing the opinions in his report by listing "Key Findings").

Mr. Goodman lacks the proper qualifications to offer these opinions. He does not have any degrees in economics, international trade, international relations, political science, public policy, environmental science, or geology. Exhibit B to Jones Declaration at 2-4, Goodman Dep. 8:11-10:18. He also admitted that he has "never taught any courses about coal markets[, has] . . . never been hired to give any speeches on coal markets[,]" and has never published an article on coal markets. *Id.* at 7, 5, Goodman Dep. 22:11-19, 15:3-7. He does not subscribe to the leading industry publications that cover international coal markets. *Id.* at 11, Goodman Dep. 103:12-19. He did not purchase the International Energy Agency's ("IEA") World Energy Outlook ("WEO") and Coal reports for 2017—two sources on which he relies almost entirely— until after he was retained in this case. *Id.* at 9, Goodman Dep. 99:2-24. Furthermore, Mr. Goodman lacks any professional experience forecasting coal markets or valuing coal mines or companies. By his own admission, over the course of his entire career prior to his work in this case, Mr. Goodman has, among other things, never been hired by a coal company, has never been hired before to forecast international or domestic coal markets, or to value coal companies or coal mines. *Id.* at 6-7, Goodman Dep. 21:18-22:10. Mr. Goodman is doubly unqualified: he lacks relevant training and education and has next to no familiarity with coal and coal markets.

In his deposition, Mr. Goodman candidly analogized his work in this case to "exploratory surgery." *Id.* at 20, Goodman Dep. 223:8. Under *Avila* and similar cases, however, a purported expert cannot permissibly "explore" a new body for a new type of surgery

PLAINTIFFS' AND PLAINTIFF-INTERVENOR'S
DAUBERT MOTION TO EXCLUDE DEFENDANTS'
EXPERT IAN GOODMAN – 7 OF 13
(3:18-cv-05005-RJB)

LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
TACOMA, WASHINGTON 98402
(253) 620-6500 - FACSIMILE (253) 620-6565

in a field outside that purported expert's expertise. Such is the case here, and accordingly Mr. Goodman is unqualified to offer any of the opinions described in his report, and his testimony should be excluded in its entirety.

**II.     Mr. Goodman's Testimony Should Be Excluded In Its Entirety Because It Would Be Unreliable**

*Daubert* also requires judges to assess the reliability of an expert's testimony in order to rule on its admissibility. *Daubert*, 509 U.S. at 590-591. The reliability inquiry ensures that the "testimony has 'a reliable basis in the knowledge and experience of [the relevant] discipline.'" *Kumho Tire Co.*, 526 U.S. at 149 (quoting *Daubert*, 509 U.S. at 592). As the Ninth Circuit has held when assessing an expert's reliability, "One very significant fact to be considered is whether the experts are proposing to testify about matters growing naturally and directly out of research they have conducted *independent of the litigation, or whether they have developed their opinions expressly for the purposes of testifying*." *Daubert II*, 43 F.3d at 1317 (emphasis added).

Here, Mr. Goodman's opinions in this case do not flow from his prior research. Indeed, as set forth above, he has no prior relevant experience from which to draw. Instead, his opinions flow entirely from his $250,000 research project for this case. That project was nothing more than a selective review of publicly available sources that Mr. Goodman conducted expressly for the purpose of offering testimony in this case. A witness may not demonstrate himself to be a reliable expert through such a review. *See, e.g., Wade-Greaux*, 874 F. Supp. at 1476-77; *Mancuso*, 967 F. Supp. at 1443. For many of the same reasons that Mr. Goodman is unqualified to testify as an expert witness in this case, his report and proffered testimony are also unreliable. *Id.*

PLAINTIFFS' AND PLAINTIFF-INTERVENOR'S
DAUBERT MOTION TO EXCLUDE DEFENDANTS'
EXPERT IAN GOODMAN – 8 OF 13
(3:18-cv-05005-RJB)

LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
TACOMA, WASHINGTON  98402
(253) 620-6500  -  FACSIMILE (253) 620-6565

Additionally, Mr. Goodman's methodology is unreliable because it misuses the main source that serves as the basis for his opinions. To explain, Mr. Goodman purports to offer a forecast of future domestic U.S. coal demand and future Asian demand for U.S. coal. As the basis for that forecast, Mr. Goodman made "heavy reliance on the World Energy Outlook," referring to it as a "foundational source." Exhibit B to Jones Declaration at 17, 19, Goodman Dep. 189:10-11, 192:7. Mr. Goodman also revealed that he treated the WEO as a forecast when he compared it to other published forecasts: "A lot of other forecasts like the U.S. EIA numbers are U.S.-centric, they're not focused on international markets. WEO is really focused on international markets so it's very well-suited for that purpose." *Id.* at 18, Goodman Dep. 190:12-16. Finally, Mr. Goodman admitted that he "pick[ed]" the WEO's "New Policies Scenario" as the basis for his conclusions. *Id.*, Goodman Dep. 190:17-19.

Mr. Goodman's approach to the WEO suffers from a fundamental and irreparable flaw: the WEO is not a forecast. In fact, the WEO's authors admonished readers to avoid doing exactly what Mr. Goodman does here. *See* Exhibit D to Jones Declaration at 2, International Energy Agency, World Energy Outlook 2017 at 36 ("That this scenario enjoys most of the limelight in the *Outlook* is often taken as an implicit sign that this is—despite our protestations to the contrary—a forecast. However, the IEA does not have a long-term forecast."). Mr. Goodman was forced to admit in his deposition that "The WEO is explicitly not a forecast." Exhibit B to Jones Declaration at 16, Goodman Dep. 187:21. The end result is that Mr. Goodman, a dilettante in the area of coal economics, offers a forecast on domestic and international demand for coal (something that he has never done before) by relying on a source

PLAINTIFFS' AND PLAINTIFF-INTERVENOR'S
DAUBERT MOTION TO EXCLUDE DEFENDANTS'
EXPERT IAN GOODMAN – 9 OF 13
(3:18-cv-05005-RJB)

LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
TACOMA, WASHINGTON 98402
(253) 620-6500 - FACSIMILE (253) 620-6565

that explicitly states that it is not a forecast.  That makes Mr. Goodman's methodology patently unreliable, and should lead to the exclusion of his opinions.

Mr. Goodman's opinion on the economic viability of the export terminal at issue is also based on an unreliable methodology.  In Mr. Goodman's opinion, "The Project is a speculative venture that is unlikely to operate at high levels of throughput over the long-term."  Exhibit A to Jones Declaration at 2, Goodman Report at 1 ("Key Finding 2").  But when pressed for the basis of that opinion, Mr. Goodman had nothing to offer.  Mr. Goodman repeatedly insisted that the coal exports that would move through the proposed terminal would fall within the range of zero to 44 million tons per year.  *See, e.g.*, Exhibit B to Jones Declaration at 12-13, Goodman Dep. 125:25-126:2 ("[A]s I've said in my report and as I've tried to answer today, the range hypothetically is from zero to 44.").  Mr. Goodman admitted that he did not "compute a specific average" of the number of tons of coal that would be shipped through the terminal in any given year.  *Id.* at 14, Goodman Dep. 129:16.  When questioned further, Mr. Goodman stated his opinion that annual coal exports through the proposed terminal would be at "[t]he low end of the range" and that "picking a number . . . [the] average might be in the order of 10 million tons per year[.]" *Id.* at 15, Goodman Dep. 131:11-15.  He could not provide any further illustration of his "analysis" or the economic factors on which it was based.  It is as if Mr. Goodman plucked his 10 million ton estimate out of thin air.

If Mr. Goodman's opinion is that annual coal exports through the terminal would be between zero and 44 million tons, it is unreliable because it is a baseless prediction that states only that exports will be between zero and the anticipated maximum throughput capacity of the proposed terminal.  And if his opinion is any more specific than the range of zero to 44 million

PLAINTIFFS' AND PLAINTIFF-INTERVENOR'S
DAUBERT MOTION TO EXCLUDE DEFENDANTS'
EXPERT IAN GOODMAN – 10 OF 13
(3:18-cv-05005-RJB)

LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
TACOMA, WASHINGTON  98402
(253) 620-6500  -  FACSIMILE (253) 620-6565

tons, e.g., 10 million tons per year, "pick[ing] number[s]" is not a reliable methodology on which to base that opinion. In either case, Mr. Goodman's opinion on the projected annual throughput of the proposed terminal—which is a key component of his "central finding"—is based on an unreliable methodology and should be excluded.

## CONCLUSION

Because Mr. Goodman is unqualified to testify as an expert in this case, and because his expert testimony would be unreliable, Plaintiffs respectfully request that this Court exclude Mr. Goodman's opinions in their entirety.

Dated this 13 day of February, 2019.

VENABLE LLP

By: *s/Kathryn K. Floyd*
    Kathryn K. Floyd, DC Bar No. 411027
    (Admitted *pro hac vice*)
    kkfloyd@venable.com

By: *s/Jay C. Johnson*
    Jay C. Johnson, VA Bar No. 47009
    jcjohnson@venable.com
    (Admitted *pro hac vice*)

By: *s/David L. Feinberg*
    David L. Feinberg, DC Bar No. 982635
    DLFeinberg@Venable.com
    (Admitted *pro hac vice*)

    600 Massachusetts Ave NW
    Washington DC 20001
    202-344-4000

By: *s/Kyle W. Robisch*
    Kyle W. Robisch, DC Bar No. 1046856
    KWRobisch@Venable.com
    (Admitted *pro hac vice*)

PLAINTIFFS' AND PLAINTIFF-INTERVENOR'S
DAUBERT MOTION TO EXCLUDE DEFENDANTS'
EXPERT IAN GOODMAN – 11 OF 13
(3:18-cv-05005-RJB)

LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
TACOMA, WASHINGTON 98402
(253) 620-6500 - FACSIMILE (253) 620-6565

ORRICK, HERRINGTON & SUTCLIFFE LLP

By: *s/Robert M. McKenna*
    Robert M. McKenna, WSBA No. 18327
    rmckenna@orrick.com

By: *s/Adam N. Tabor*
    Adam N. Tabor, WSBA No. 50912
    atabor@orrick.com

    701 Fifth Avenue, Suite 5600
    Seattle, WA 98104-7097
    206-839-4300

GORDON THOMAS HONEYWELL, LLP

By: *s/Bradley B. Jones*
    Bradley B. Jones, WSBA No. 17197
    bjones@gth-law.com
    1201 Pacific Ave, Ste 2100
    Tacoma, WA 98402
    (253) 620-6500

PLAINTIFFS' AND PLAINTIFF-INTERVENOR'S
DAUBERT MOTION TO EXCLUDE DEFENDANTS'
EXPERT IAN GOODMAN – 12 OF 13
(3:18-cv-05005-RJB)

LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
TACOMA, WASHINGTON 98402
(253) 620-6500 - FACSIMILE (253) 620-6565

CERTIFICATE OF SERVICE

I hereby certify that on February 13, 2019, I caused the foregoing Plaintiffs' and Plaintiff-Intervenor's Daubert Motion to Exclude Defendants' Expert Ian Goodman, Declaration in Support, and Proposed Order to be electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of the filing to all counsel of record.

By: _____
Savanna Stevens, Legal Assistant

PLAINTIFFS' AND PLAINTIFF-INTERVENOR'S
DAUBERT MOTION TO EXCLUDE DEFENDANTS'
EXPERT IAN GOODMAN – 13 OF 13
(3:18-cv-05005-RJB)

LAW OFFICES
GORDON THOMAS HONEYWELL LLP
1201 PACIFIC AVENUE, SUITE 2100
TACOMA, WASHINGTON 98402
(253) 620-6500 - FACSIMILE (253) 620-6565