UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| LIGHTHOUSE RESOURCES INC., et al.,<br><br>Plaintiffs,<br><br>and<br><br>BNSF RAILWAY COMPANY<br><br>Intervenor-Plaintiff,<br><br>v.<br><br>JAY INSLEE, et al.,<br><br>Defendants,<br><br>and<br><br>WASHINGTON ENVIRONMENTAL COUNCIL, et al.,<br><br>Intervenor-Defendants. | CASE NO. 3:18-cv-05005-RJB<br><br>ORDER ON DEFENDANTS' AND INTERVENOR-DEFENDANTS' MOTIONS FOR PARTIAL SUMMARY JUDGMENT ON BNSF FOREIGN AFFAIRS DOCTRINE CLAIM |

THIS MATTER comes before the Court on the Intervenor-Defendants Washington Environmental Council, Climate Solutions, Friends of the Columbia Gorge, Sierra Club and Columbia Riverkeeper's (collectively "WEC") Motion for Partial Summary Judgment on BNSF

ORDER ON DEFENDANTS' AND INTERVENOR-DEFENDANTS' MOTIONS FOR PARTIAL SUMMARY JUDGMENT ON BNSF FOREIGN AFFAIRS DOCTRINE CLAIM - 1

Railway Company's ("BNSF") Foreign Affairs Doctrine Claim (Dkt. 206), Defendants Jay Inslee and Maia Bellon's (collectively the "State") Motion for Summary Judgment on BNSF's Foreign Affairs Doctrine Claim (Dkt. 208) and Intervenor-Plaintiff BNSF's Motion for Summary Judgment on the Foreign Affairs Doctrine Claims (Dkt. 214).  The Court has considered pleadings filed regarding the motions, including briefs of amici curiae, oral argument heard on 26 March 2019, and the remainder of the file herein.

This case originally challenged the State's denial of a Clean Water Act Section 401 Certification ("water quality certificate") and a denial of request for approval of a sublease of state-owned aquatic lands for Plaintiffs Lighthouse Resources, Inc., Lighthouse Products, LLC, LHR Infrastructure, LLC, LHR Coal LLC, and Millennium Bulk Terminals-Longview, LLC's (collectively "Lighthouse") proposed coal export terminal.  Dkt. 1.

As is relevant to the pending motions, Intervenor-Plaintiff BNSF, who plans to provide rail service to the proposed terminal, maintain that the State's denial of the water quality certificate is preempted by the foreign affairs doctrine.  Lighthouse and BNSF make other claims in their Complaints that have either been dismissed or are not the subject of these motions.

The State and WEC move for summary dismissal of the foreign affairs doctrine claim (Dkts. 206 and 208), BNSF opposes the motions and files a cross motion for summary judgment on its foreign affairs doctrine claim (Dkts. 214).  For the reasons provided below, the State and WEC's motion for summary judgment dismissal of BNSF's foreign affairs doctrine claim should be granted, BNSF's cross motion denied, and the foreign affairs doctrine claim dismissed.

## I.     FACTS

In order to meet Asian coal demands, Lighthouse, a coal supply chain company, proposes building a new coal export facility at the existing Millennium Bulk Terminal in Longview,

Washington on and in the Columbia River.  Dkt. 1.  At full build out, the proposed terminal would be capable of exporting 44 million metric tons of coal a year, and would include three large docks.  *Id.*  The coal would come primarily from the Powder River Basin, in Montana and Wyoming, and the Uinta Basin, in Utah and Colorado.  *Id.*  Lighthouse owns and leases the coal mining rights, operates coal mines, and maintains coal loading infrastructure.  *Id.*  BNSF would provide rail transport for the coal.  *Id.*  The proposed terminal would be operated by Lighthouse.  *Id.*  After Lighthouse unloads and stockpiles the coal, it would eventually be loaded onto ocean going vessels at the proposed terminal's docks and shipped to Asia.  *Id.*

Lighthouse began the permitting process for the proposed terminal in 2012.  *Id.*  As is relevant to the motions here, on July 18, 2016, Lighthouse submitted an application to the State for a Section 401 water quality certification, which is required under the Clean Water Act, 33 U.S.C. §1341.  *Id.*  A Final Environmental Impact Statement ("FEIS") was issued on April 28, 2017.  The EIS identified nine environmental resource areas that would suffer unavoidable and significant adverse environmental impacts from the construction and operation of the proposed terminal.  Dkt. 130-1.  Those identified areas were:  social and community resources, cultural resources, tribal resources, rail transportation, rail safety, vehicle transportation, vessel transportation, noise and vibration, and air quality.  Dkt. 130-1, at 43-45.  The FEIS was not appealed.

On September 26, 2017, the State denied Lighthouse's application for a water quality certificate on two grounds.  Dkt. 1-1.  The first was that the proposed terminal's "significant unavoidable adverse impacts" identified in the FEIS conflicted with the Washington State Environmental Policy Act ("SEPA") policies in WAC 173-802-110.  Dkt. 1-1, at 4-14.  The second basis for the denial was that the State did not have reasonable assurance that the proposed

terminal would meet applicable water quality standards. Dkt. 1-1, at 14-19. Lighthouse appealed the State's denial to Washington's Pollution Control Hearings Board. Dkt. 130-6. On August 15, 2018, the State's decision to deny Lighthouse's water quality certificate was affirmed by that board. *Id.* On September 6, 2018, Lighthouse appealed the Pollution Control Hearings Board's decision to the Cowlitz County Superior Court, where it is now pending. *Washington State Dept. of Ecology v. Millennium Bulk Terminals-Longview, LLC,* Cowlitz County, Washington Superior Court case number 18-2-00994-08.

## II.   DISCUSSION

### A. STANDARD ON MOTION FOR SUMMARY JUDGMENT

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)(nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). *See also* Fed. R. Civ. P. 56 (d). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors Association*, 809 F.2d 626, 630 (9th Cir. 1987).

ORDER ON DEFENDANTS' AND INTERVENOR-DEFENDANTS' MOTIONS FOR PARTIAL SUMMARY JUDGMENT ON BNSF FOREIGN AFFAIRS DOCTRINE CLAIM - 4

The determination of the existence of a material fact is often a close question. The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254, T.W. *Elect. Service Inc.*, 809 F.2d at 630. The court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*). Conclusory, non-specific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990).

**B. FOREIGN AFFAIRS DOCTRINE**

"It is well established that the federal government holds the exclusive authority to administer foreign affairs." *Gingery v. City of Glendale*, 831 F.3d 1222, 1228–29 (9th Cir. 2016). "There is, of course, no question that at some point an exercise of state power that touches on foreign relations must yield to the National Government's policy, given the concern for uniformity in this country's dealings with foreign nations that animated the Constitution's allocation of the foreign relations power to the National Government in the first place." *Am. Ins. Ass'n v. Garamendi*, 539 U.S. 396, 413 (2003). Under the foreign affairs doctrine, state laws that intrude on this exclusively federal power are preempted, under either the doctrine of conflict preemption or the doctrine of field preemption. *Gingery,* at 1229. BNSF asserts that the State's denial of the water quality certificate in preempted under both doctrines. Each will be examined in turn.

    1. <u>Conflict Preemption</u>

"Under the doctrine of conflict preemption, a state action must yield to federal executive authority where there is evidence of clear conflict between the policies adopted by the two." *Gingery,* at 1229. "Generally, then, valid executive agreements are fit to preempt state law, just as treaties are." *Garamendi,* at 416. State laws have also been declared unconstitutional under the foreign affairs doctrine "when the state law conflicts with a federal action such as a[n] . . . express Executive Branch policy." *Von Saher v. Norton Simon Museum of Art at Pasadena,* 592 F.3d 954, 960 (9th Cir. 2010).

The State and WEC's motions for summary judgment on BNSF's conflict preemption claim should be granted and BNSF's cross-motion denied. BNSF has failed to point to an express executive policy which is in conflict with the State's denial of the permit. It does not point to a policy in a "valid executive agreement" or in a treaty. *Garamendi,* at 416. It points to the National Security Strategy Report ("NSSR"), Executive Order 13783, and general remarks by the President, and others in his administration. None of these suffice. Both the NSSR and Executive Order 13783 indicate a stated policy of encouraging the development and export of coal, while at the same time, balancing the United States' commitment to environmental protection. For example, the NSSR provides, in part, the "United States will continue to advance an approach that balances energy security, economic development, and environmental protection. The United States will remain a global leader in reducing traditional pollution, as well as greenhouse gases, while expanding our economy." Dkt. 216, at 36. It states that "while also ensuring responsible environmental stewardship," the United States will promote exports of our energy resources." *Id.*, at 37. Likewise, Executive Order 13783 provides that, in addition to being the policy of the United States to "promote clean and safe development of our Nation's vast energy resource," it is the "policy of the United States that, to the extent permitted by law,

ORDER ON DEFENDANTS' AND INTERVENOR-DEFENDANTS' MOTIONS FOR PARTIAL SUMMARY JUDGMENT ON BNSF FOREIGN AFFAIRS DOCTRINE CLAIM - 6

all agencies should take appropriate actions to promote clean air and clean water for the American people." The President's and his administration official's generalized remarks favoring the development of the coal industry and the export of coal are not in clear conflict with the State's decision.  This claim should be dismissed.

### 2. Field Preemption

"Under the doctrine of field preemption, even in the absence of any express federal policy, a state action may be preempted where (1) its real purpose does not concern an area of traditional state responsibility, and (2) it intrudes on the federal government's foreign affairs power." *Gingery,* at 1229.

The State and WEC's motions for summary judgment on BNSF's field preemption claim should be granted, BNSF's cross-motion denied, and the claim dismissed.  BNSF has failed to point to material issues of fact as to whether the State's "real purpose [did] not concern an area of traditional state responsibility" or that the State's decision "intrude[d] on the federal government's foreign affairs power."  For purposes of this claim, the State's decision concerned an area of "traditional state responsibility," the management of its natural resources.[1]  Moreover, any impact the decision had on the federal government's foreign affairs power (although it is not clear that there was any impact) would, at best, be no more than "some incidental or indirect effect on foreign affairs," which is insufficient. *Movsesian,* at 1076.

---

[1] When the Clean Water Act was passed almost 50 years ago, Senator Edmund Muskie explained Congressional intent to protect the State's ability to play a role in managing its resources:

> No polluter will be able to hide behind a Federal license or permit as an excuse for a violation of water quality standards.  No polluter will be able to make major investments in facilities under a Federal license or permit without providing assurance that the facility will comply with water quality standards.  No State water pollution control agency will be confronted with a fait accompli by an industry that has built a plant without consideration of water quality requirements.

116 Cong. Rec. 8984 (1970).

ORDER ON DEFENDANTS' AND INTERVENOR-DEFENDANTS' MOTIONS FOR PARTIAL SUMMARY JUDGMENT ON BNSF FOREIGN AFFAIRS DOCTRINE CLAIM - 7

3. Availability of Equitable Cause of Action

Because BNSF fails to make an adequate showing on its foreign affairs doctrine claim, the Court will not reach the Defendants' arguments that BNSF does not have an viable cause of action under either 42 U.S.C. § 1983 or in equity because it was not the entity being regulated by the State's action.

### III.  ORDER

Therefore, it is hereby **ORDERED** that:

- Intervenor-Defendants Washington Environmental Council, Climate Solutions, Friends of the Columbia Gorge, Sierra Club and Columbia Riverkeeper's Motion for Partial Summary Judgment on BNSF's Foreign Affairs Doctrine Claim (Dkt. 206) and Defendants Jay Inslee and Maia Bellon's Motion for Summary Judgment on BNSF's Foreign Affairs Doctrine Claims (Dkt. 208) **ARE GRANTED**; and

- Intervenor-Plaintiff BNSF's Motion for Summary Judgment on the Foreign Affairs Doctrine Claims (Dkt. 214) **IS DENIED;** and

- The Foreign Affairs Doctrine Claims **ARE DISMISSED**.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

Dated this 1st day of April, 2019.

*/s/ Robert J. Bryan*
ROBERT J. BRYAN
United States District Judge